ORTON HICKS, Plaintiff, *v.* ERIC H. HAIGHT and Others, Defendants.

Supreme Court, Nassau County, March 31, 1939.

*Ward & Palzer*, for the plaintiff.

*Spence, Windels, Walser, Hotchkiss & Angell*, for the defendants.

STEINBRINK, J.   This is a motion to dismiss the amended complaint herein for failure to state facts sufficient to constitute a cause of action.   Four causes of action are pleaded.   Under the first cause of action the plaintiff sues the defendant Films Incorporated (hereinafter referred to as the corporation) for breach of a contract of employment.   The contract, a copy of which is annexed to the complaint, provides for the plaintiff's employment " as president and/or general manager for the period of ten years from the 31st of December, 1935, subject to the general control of " the corporation, at a salary of $9,360 per year, in addition to a bonus of ten per cent of the gross income of the corporation from the conduct of its public carrier business, said bonus to be reduced to five per cent in the event that plaintiff's total income reaches $17,500 per year, or in the event that the net earnings of the corporation require a reduction in the dividends to less than two dollars per share per annum.   Plaintiff was required to devote such time, attention and energy reasonably commensurate with the duties assigned to him and to serve the corporation faithfully, diligently and according to his best ability and to use his best efforts to promote the interests of the corporation.   It was also provided that " this agreement constitutes and expresses the whole agreement of said parties hereto in reference " to plaintiff's employment and " to any of the matters or things herein provided for, or hereinabove discussed or mentioned in reference to such employment."   Plaintiff alleges that pursuant to the said agreement he was required to employ and supervise the activities of the personnel in the various departments of the corporation, and that likewise, pursuant to the said agreement and to the by-laws of the corporation existing at the time of its execution, he was to have the general direction of the policies, business and affairs of the corporation

as chief executive officer and to perform the duties incident thereto; that he entered upon his duties as such executive officer " utilizing his best efforts to promote the interests of the " corporation, " and to increase its business, but was prevented from so doing by the " corporation, " wilfully and unreasonably interfering with his acts and duties as such chief executive officer, and counteracting his orders." He alleges that he was prevented from employing and supervising the activities of the personnel and was required to submit to the hiring of inefficient employees; that the corporation created a new office, to wit, chairman of the board of directors, with authority and power to act as chief executive officer and to perform all of the duties which were to be performed by the plaintiff under the said agreement; that the corporation adopted a resolution curtailing and diminishing his powers and duties by giving him general direction and supervision over ordinary details relating to the corporate activities and subordinating him to the chairman of the board of directors; and that the corporation employed one Haight as chairman of the board of directors and as chief executive officer of the corporation. By reason of the foregoing, plaintiff asserts the corporation committed a breach of the contract of employment. It is his claim that the breach was committed by changing his powers and duties to such an extent as to effect a change in the position he was hired to fill.

One hired for a definite term to fill a position requiring the performance of expressly defined duties may elect to treat a complete transference of those duties to another during the term of the contract of employment as a breach thereof. (*Marks* v. *Cowdin*, 226 N. Y. 138, 146, 147.) This rule applies as well to a corporate employer, for the authority of a corporation to discharge an officer or employee at pleasure does not carry with it the right to discharge one employed for a definite term. (*Cuppy* v. *Stollwerck Bros.*, 216 N. Y. 591, 597.) The first cause of action is predicated entirely on the claim that the plaintiff was hired to act as chief executive officer of the corporation. The contract of employment does not expressly so provide. It provides for his employment " as president and/or general manager * * * subject to the general control " of the corporation. It is only upon the assumption that the words " and/or " were used in the conjunctive rather than in the disjunctive that there may be some merit to the plaintiff's claim that the office of president and general manager, as defined by the existing by-laws, embraced the duties of the chief executive officer of the corporation. The expression " and/or," while the subject of heated controversy, has been enjoying increasing use. (3 C. J. S. 1069.) " The interpretation

to be afforded may depend in each instance upon the circumstances under which it [the expression ' and/or '] is used, and it must be so construed as to express the true intention of the parties to the transaction." (*Schaffer* v. *City Bank Farmers Trust Co.*, 239 App. Div. 531, 533. See, also, *Bobrow* v. *United States Casualty Co.*, 231 id. 91.) The practical construction placed on the expression by the parties, and the circumstances surrounding execution of the agreement, may be of some aid in determining which interpretation will best accord with the equities of the situation. Such determination, however, must be left to the trier of the facts.

Construing the complaint with liberality and proceeding accordingly upon the assumption that the plaintiff was hired as chief executive officer of the corporation, it will be for the trier of the facts to determine whether or not the changes in the plaintiff's powers and duties effected such a change in the position he was hired to fill as to constitute a breach of the contract of employment.

Under the second cause of action plaintiff sues for breach of the same contract of employment, alleging that the corporation willfully and fraudulently caused substantial amounts, representing obsolescence and depreciation in its property, to be recorded in its books, and that it unreasonably and without justification increased the overhead and operating expenses of its business, with the result that the plaintiff was deprived of the bonus of ten per cent provided for in the agreement.

The defendant contends that the plaintiff has waived his right to rely upon the foregoing as a breach of the contract of employment by reason of his acceptance of compensation at the reduced rate for a period of at least seven months. But since the plaintiff does not allege that he knew of the acts complained of during the period when he was accepting the claimed reduced compensation, waiver may not be implied from the complaint alone.

The third and fourth causes of action charge the individual defendants, as directors and officers of the corporation, with a conspiracy to maliciously induce the corporation to breach the plaintiff's contract of employment in the manner alleged in the first and second causes of action. Plaintiff thus invokes the rule that unjustified and intentional interference with contractual rights with knowledge thereof constitutes a legal wrong. (*Hornstein* v. *Podwitz*, 254 N. Y. 443; *Campbell* v. *Gates*, 236 id. 457; *Lamb* v. *Cheney & Sons*, 227 id. 418.)

The question presented is whether directors and officers of a corporation, acting in their representative capacity, are to be held liable for procuring a breach of contract by the corporation. There do not seem to be any reported appellate court decisions in this

State directly in point. The question was discussed in *Lukach* v. *Blair* (108 Misc. 20) wherein it was said: " Plaintiff's brief indicates that he seeks to recover the damages resulting from a breach of contract. (a) No action on contract can be maintained against the defendant directors who were not parties to the contract. (b) It seems plaintiff, vaguely and indefinitely, relies on an alleged tort akin to the tort of interfering with a contract right. The limits within which that doctrine will be confined have not been worked out. See 18 Harv. Law Rev. 423; Elliott Cont. chap. 56. The briefs do not refer to any case in which an attempt was made to hold the members of a directorate liable on that theory for having caused their corporation to breach its contract. Such an extension of the doctrine would tend to leave the directors open to tort claims whenever the corporation had failed to perform a contract. In the exercise of their discretion and in acting on their judgment for the benefit of their corporation, the directors should be free from possible liability of that kind. Moreover, it would not seem feasible to draw a line between directors' acts which are dictated by no other motive than the performance of their duties as directors and their acts which, though they may be performed in transacting the business of the corporation, are actuated by ulterior motives — such as the motive to bring about a breach of the corporate contract. But even were directors to be held liable for so conducting their corporation as to cause it to fail to perform its contract, it is probable that they would not be held personally liable where the promisee could enforce full satisfaction of a judgment obtained in an action against the corporation for breach of contract. In that situation there would be no occasion for introducing a new form of remedy. Accordingly, if the principle applied in *Lumley* v. *Gye* (2 El. & Bl. 216), and in *Rice* v. *Manley* (66 N. Y. 82), should be extended to hold directors for bringing about the nonperformance of corporate contracts, it is likely to be limited to cases where a judgment against the corporation would be worthless. In this case there are no allegations tending to show that the engineering company is not responsible."

In *Said* v. *Butt* (L. R. [1920] 3 K. B. 497), plaintiff, having been ejected from a theatre by the defendant, who was its managing director, sued the defendant for inducing the proprietors of the theatre to breach the plaintiff's contract of admission as evidenced by an admission ticket. It appeared that the defendant had acted within the scope of his authority. The court said:

" If, therefore, the plaintiff, assuming that a contract existed between the company and himself, can sue the defendant for wrongfully procuring a breach of that contract, the gravest and

widest consequences must ensue. This is the more apparent when it is remembered that it is not necessary to prove actual malice against a defendant in order to establish a cause of action against him for knowingly procuring the breach of a third person's contract with the plaintiff, whereby the plaintiff suffers pecuniary damage: see *Pratt* v. *British Medical Association* (L. R. [1919], 1 K. B. 244), citing *South Wales Miners' Federation* v. *Glamorgan Coal Co.* (L. R. [1905] A. C. 239).

" If the plaintiff is right in his contention, it seems to follow that whenever either a managing director or a board of directors, or a manager or other official of a company, causes or procures a breach by that company of its contract with a third person, each director or official will be liable to an action for damages, upon the principle of *Lumley* v. *Gye* (2 El. & Bl. 216), as for a tortious act. So, too, with the manager or other agent of a private firm, who does the like thing. This far-reaching result of the principle here suggested by the plaintiff is emphasized, when it is remembered that in an ordinary action for breach of contract the plaintiff recovers his pecuniary loss only; whereas in an action for wrongfully procuring a breach of contract the damages against the wrongdoer are at large, and may vastly exceed the sum recoverable in a mere claim for breach of contract against the contractor: see *Pratt* v. *British Medical Association* (*supra*), and *Exchange Telegraph Co.* v. *Gregory* (L. R. [1896] 1 Q. B. 147). * * *

" I have searched in vain for any decision which indicates that a servant is liable in tort for procuring a breach of his master's contract with another. If such a cause of action existed, I imagine that it would have been successfully asserted ere this. The explanation of the breadth of the language used in the decisions probably lies in the fact that in every one of the sets of circumstances before the Court the person who procured the breach of contract was in fact a stranger, that is a third person, who stood wholly outside the area of the bargain made between the two contracting parties. * * *

" But the servant who causes a breach of his master's contract with a third person seems to stand in a wholly different position. He is not a stranger. He is the *alter ego* of his master. His acts are in law the acts of his employer. In such a case it is the master himself, by his agent, breaking the contract he has made, and in my view an action against the agent under the *Lumley* v. *Gye* (*supra*) principle must therefore fail, just as it would fail if brought against the master himself for wrongfully procuring a breach of his own contract."

This court is in complete accord with the views expressed. It would be anomalous indeed to hold an agent liable for tort committed within the scope of his authority, when liability does not attach to the principal for the same tort committed on his behalf and presumably for his benefit. Substantially the claims here asserted are in contract, not in tort, and plaintiff's remedy against the principal on the contract is adequate.

In accordance with the foregoing, the motion is denied as to the first and second causes of action and granted as to the third and fourth.