**SINCLAIR REFINING COMPANY**

v.

**Samuel M. ATKINSON et al.**

**Civ. No. 2566.**

United States District Court
N. D. Indiana,
Hammond Division.

June 23, 1960.

3. 26 U.S.C., 1952 ed., § 3471(a).

Winston, Strawn, Smith & Patterson, Chicago, Ill., Galvin, Galvin & Leeney, Hammond, Ind., for plaintiff.

Abraham W. Brussell, Chicago, Ill., David Cohen, East Chicago, Ind., for defendants.

SWYGERT, Chief Judge.

The matter is before the court principally on a motion to vacate its order of March 12, 1960, and to grant a rehearing on several motions which were the subject of the March 12th order.

A rehearing has been afforded the defendants. After oral argument and submission of briefs on the motion for rehearing, I have come to the conclusion that the March 12th order should be vacated and a new order entered which modifies substantially the older order. A memorandum setting forth the reasons for the new order seems appropriate.

### Dismissal of Count I.

As I understand defendants' contention, it is that if there are possibly protected or prohibited union activities under §§ 7 and 8 of the Labor Management Relations Act 29 U.S.C.A. §§ 157, 158 involved in the factual situation whereby the "no-strike" agreement was allegedly breached, the court cannot entertain jurisdiction under § 301 of the Act, 29 U.S. C.A. § 185. They cite San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775, and Plumbers, etc. v. County of Door, 359 U.S. 354, 79 S.Ct. 844, 3 L.Ed.2d 872.

The Garmon and Door cases dealt with pre-emption of state-court jurisdiction where there were present or arguably present protected or prohibited union activities which came within the jurisdiction of National Labor Relations Board under §§ 7, 8 and 10 of the Act, 29 U.S. C.A. §§ 157, 158, 160. Neither case presented the problem of a conflict between the jurisdiction of the Board and the courts because of a possible overlap of activities protected or prohibited by §§ 7 and 8 and at the same time the basis for a violation of a labor contract enforceable under § 301.

■■ The alleged violation of a collective bargaining contract is the basis of Count I. There is nothing in the record at this point to indicate that the events claimed to constitute a violation of the contract also involved either protected or prohibited activity. But even the presence of such activities would not give preferential jurisdiction to the Board and oust that of the courts. The responsibility of enforcing labor contracts lies in the courts; otherwise there would have been no need for enacting § 301.

### Dismissal of Count II.

The Court's attention has been called to two cases not considered at the time the motion to dismiss was originally ruled upon, Lewis v. Benedict Coal Corp., 361 U.S. 459, 80 S.Ct. 489, 4 L.Ed.2d 442, and Wilson & Co. v. United Packinghouse Wkrs. of America, D.C.N.D. Iowa, 1960, 181 F.Supp. 809.

Judge Graven in the Wilson case, after an exhaustive discussion of the identical problem, concluded that the officers of the labor union are not individually liable for the inducement of a breach of a collective bargaining contract where the union is being sued under § 301 of the Taft-Hartley Act for the breach. In his opinion, Judge Graven cited the Lewis case in support of his conclusion. In that case the Supreme Court in the majority opinion stated [361 U.S. 469, 80 S.Ct. 495]:

"Section 301(b) of the Taft-Hartley Act, 29 U.S.C.A. § 185(b), pro-

vides that 'any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets.' At the least this evidences a congressional intention that the union as an entity, like a corporation, should in the absence of agreement be the sole source of recovery for injury inflicted by it. * * * .''

■ It is clear from the language in the Lewis case that a labor union when sued under § 301 must be treated as if it were a corporation. It is also made clear that union members or officers cannot be held individually liable for acts of the union, as, similarly, stockholders and officers of a corporation are not liable for corporate acts.

It is generally the law that officers and employees of a corporation cannot be held liable for inducing a breach of its contract. Wilson & Co. v. United Packinghouse Wkrs. of America, supra; 30 Am.Jur., Interference, § 37; Hicks v. Haight, 171 Misc. 151, 11 N.Y.S.2d 912 (1939); 26 A.L.R.2d 1270. By analogy, and having in mind the language in the Lewis case, a union member or officer cannot be held liable for inducing the breach of a union contract.

■ The fact that Count II is based on diversity jurisdiction is not determinative of the motion. Section 301 is more than a procedural statute; it is also substantive. The section is the statutory source of federal law governing remedies for violations of collective bargaining contracts. Textile Wkrs., etc. v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972.

■ Drawing, then, from general corporate law, and relating it to suits for breaches of collective bargaining contracts under § 301 as that section has been construed by the Supreme Court, the conclusion is inevitable that suits of the nature alleged in Count II are no longer cognizable in state or federal courts.

### Dismissal of Count III.

Plaintiff urges that since Lincoln Mills allowed specific enforcement of the agreement to arbitrate the case now compels specific enforcement of the no-strike agreement received in exchange for the promise to arbitrate. It contends that the Norris-LaGuardia Act should not preclude injunctive relief in the case at bar because the conditions which prompted passage of that Act no longer obtain.

■ That the suit at bar involves a labor dispute within the meaning of § 13(c) of the Norris-LaGuardia Act, 29 U.S.C.A. § 113(c), is beyond dispute. That it also involves an alleged breach of a no-strike clause of a collective bargaining agreement does not alter the fact a labor dispute exists under the definition of § 13(c) of the Act. A. H. Bull Steamship Co. v. National-Marine Eng. B. Ass'n, 2 Cir., 250 F.2d 332.

Since the original ruling on the motion to dismiss Count III, the Supreme Court decided Order of Railroad Telegraphers et al. v. Chicago & N. Western R. Co., 362 U.S. 330, 80 S.Ct. 761, 4 L.Ed.2d 774. In that case the Supreme Court left no doubt that § 4 of the Norris-LaGuardia Act, 29 U.S.C.A. § 104 withdraws jurisdiction from the federal courts to issue injunctions to prohibit the refusal "to perform work or remain in any relation of employment" in cases involving *any* labor dispute.

Upon reconsideration and in light of the opinion in Railroad Telegraphers, I have come to the conclusion that Lincoln Mills does not remove the sweep of the Norris-LaGuardia Act so as to permit the specific enforcement of a no-strike clause in a labor contract.

### Motion to Stay

■■ Defendants seek a stay of the action on the ground that certain grievances filed as the result of the strike or work stoppage alleged in the complaint are subject to arbitration in accordance with the procedure outlined in the con-

tract. In my opinion the resolution of these grievances by arbitration would not decide whether there was a strike or work stoppage and whether there occurred thereby a breach of the contract by the union which promised not to permit work stoppages or strikes over matters which are subject to arbitration. Lincoln Mills permits a labor union to sue under § 301 for specific performance of a promise by the employer to arbitrate grievances defined in the collective bargaining agreement. For similar reasons, the employer has the right under § 301 to sue the union for a violation of the no-strike clause.

In United Steelworkers of America v. Warrior & Gulf Navigation Co., 80 S.Ct. 1347, 1353, the majority opinion said in part:

> "The Congress, however, has by § 301 of the Labor Management Relations Act, assigned the courts the duty of determining whether the reluctant party has breached his promise to arbitrate."

Paraphrasing the above language, Congress by § 301 assigned to the courts the duty of determining whether the union has breached its promise not to strike over arbitrable grievances.

The arbitration of grievances filed by union members over disciplinary action taken by the company as a result of the alleged strike involves issues quite distinct from the issue whether the union violated its contract. For that reason the motion to stay must be denied.

### Order

This cause coming on to be heard after due notice upon the verified motion of the plaintiff for an order requiring the defendants Local 7–210 of Oil, Chemical & Atomic Workers International Union, AFL–CIO, and A. F. Schilling to produce for all proper purposes under Rule 34 F.R.Civ.P., 28 U.S.C.A. the documents hereinafter set forth, and the Court having duly considered the matter and being fully advised in the premises.

It is ordered that the defendants Local 7–210 of Oil, Chemical & Atomic Work-

ers International Union, AFL–CIO, and A. F. Schilling produce at 10:00 a. m. on July 6, 1960, at the offices of its attorney in Chicago, Illinois, for purposes of inspection, copying or photographing pursuant to Rule 34, any and all minutes, memoranda, notes or reports in their possession, custody or control of (a) membership meetings of Local 7–210; (b) membership meetings of the "Sinclair Group" of Local 7–210; (c) meetings of the Executive Board of Local 7–210; (d) meetings of the "Workmen's Committee" or "Shop Committee" or the Executive Board thereof, or any other group or committee of the Sinclair Group of local 7–210 in any way narrating, dealing with or referring to any of the following subjects involving plaintiff's East Chicago, Indiana Refinery:

1. The walkout or stoppage of work participated in by the maintenance employees and certain other day workers on February 13 and 14, 1959;

2. Any grievance or complaint over the docking of 3 Riggers for reporting late to work on February 13, 1959.