SINCLAIR REFINING COMPANY,
Plaintiff-Appellant,

v.

Samuel M. ATKINSON et al., Defendants-
Appellees.

SINCLAIR REFINING COMPANY,
Plaintiff-Appellee,

v.

Samuel M. ATKINSON et al., Defendants-
Appellants.

Nos. 13092, 13136, 13137.

United States Court of Appeals
Seventh Circuit.

April 25, 1961.

George B. Christensen, Chicago, Ill., Francis J. Galvin, Hammond, Ind., Fred H. Daugherty, Richard W. Austin, Chicago, Ill. (Winston, Strawn, Smith & Patterson, Chicago, Ill., Galvin, Galvin & Leeney, Hammond, Ind., of counsel), for Sinclair Refining.

Gilbert A. Cornfield, Chicago, Ill., David Cohen, E. Chicago, Ind., William E. Rentfro, Denver, Colo., Abraham W. Brussell, Bernard Kleiman, Chicago, Ill., for Samuel M. Atkinson, and others.

Before SCHNACKENBERG, CASTLE and MAJOR, Circuit Judges.

CASTLE, Circuit Judge.

Sinclair Refining Company, plaintiff-appellant, hereinafter referred to as plaintiff, commenced this action in the District Court. It seeks damages for alleged breach of a no-strike clause of a collective bargaining agreement; a declaration of rights; and a permanent injunction.

Count I of the complaint invokes jurisdiction under Section 301 of the Labor-Management Relations Act (29 U.S.C.A. § 185); names Oil, Chemical and Atomic Workers International Union, AFL-CIO, and Local No. 7–210 of Oil, Chemical and Atomic Workers International Union, AFL-CIO, as defendants; alleges in substance that the International and Local constitute the recognized collective bargaining agent for approximately 1700 production and maintenance employees in a bargaining unit confined to plaintiff's East Chicago, Indiana, refinery, and that said Unions by their officers, committeemen and other agents caused a strike or work stoppage by approximately 999 of the employees within the bargaining unit on February 13 and 14, 1959 over asserted pay claims of three members, aggregating $2.19, and which were arbitrable under the grievance procedure of the current collective bargaining agreement, and that the work stoppage was in violation of the no-strike clause of the agreement and caused damages to plaintiff by way of out-of-pocket expenses in the amount of $12,500.00 for which recovery is sought.

Count II is based on diversity. It names as defendants 24 individuals, employees of plaintiff at the East Chicago refinery, who are committeemen of the Local and agents of the International. It incorporates the allegations of Count I concerning the collective agreement and it seeks damages from the individual defendants in the same amount and for the same work stoppage. It alleges that the individual defendants "contrary to their duty to plaintiff to abide by said contract, and maliciously confederating and conspiring together to cause the plaintiff expense and damage, and to induce breaches of the said contract, and to interfere with performance thereof by said labor organizations and the affected employees, and to cause breaches thereof, individually and as officers, committeemen and agents of the said labor organizations, fomented, assisted and participated" in the strike or work stoppage.

Count III is based on diversity with respect to the same 24 individual defendants named in Count II and asserts jurisdiction under Section 301 of the Labor-Management Relations Act (29 U.S.C.A. § 185), as well as diversity, with respect to the Local and International Unions. In addition to the allegations of Counts I and II it alleges eight previous strikes or work stoppages at the East Chicago refinery during the term of the current collective agreement over matters subject to its grievance procedure and provisions for arbitration, damaging plaintiff great-

ly in excess of $10,000.00. It seeks a declaration of the validity and enforceability of the no-strike and grievance provisions of the contract and a permanent injunction restraining and enjoining all of the defendants "from aiding, abetting, fomenting, advising, participating in, ratifying, or condoning any strike, stoppage of work, slowdown or any other disruption of, or interference with normal employment or normal operation or production by any employee within the bargaining unit at plaintiff's East Chicago, Indiana, refinery" covered by the current collective agreement "in support of, or because of, any matter or thing which is, or could be, the subject of a grievance under the grievance procedure of said contract, or any extension thereof, or any other contract between the parties which shall contain like or similar provisions".

The defendants filed a motion to dismiss and a motion to stay. The District Court denied the motion to stay and denied the motion to dismiss as to Count I (action against Unions for damages) but granted the motion to dismiss and entered judgment dismissing Counts II (action against individual defendants for damages) and III (declaratory and injunctive relief).

The plaintiff appealed the dismissal of Counts II and III.[1] The defendants appealed the denial of the motion to stay.[2] The plaintiff's appeal (Nos. 13092 and 13136) has not been consolidated with defendants' appeal (No. 13137). However, to avoid unnecessary repetition we elect to treat them as consolidated for the purpose of disposition in one opinion.

The main contested issues presented by plaintiff's appeal are:

(1) Whether 29 U.S.C.A. § 185 precludes suit for recovery of damages from individual union officer-company employees for inducing or participating in a strike or work stoppage in violation of a no-strike clause of a collective bargaining agreement covering the unit to which they belong.

(2) Whether 29 U.S.C.A. § 101 precludes injunctive relief to restrain a future breach of a no-strike clause of a collective bargaining agreement.

Those presented by defendants' appeal are:

(1) Whether the collective bargaining agreement here involved required the employer to submit to arbitration any claim he might make for damages caused by breach of the agreement's no-strike clause.

(2) Had the employer submitted the claim to arbitration?

We will first consider the issues raised by defendants' appeal. The defendants contend that since the cause of action against the Local and International is based on an alleged violation of the no-strike clause of the collective agreement, the dispute is first subject to adjustment and determination under the arbitration procedure of the agreement and that no action can be brought until these procedures are exhausted. Defendants further contend that the causes of action against all of the defendants must be stayed until a determination of the issues raised in pending arbitrations is made because such issues are the same as those "which the plaintiff has sought the court to decide under the allegations of its complaint". This latter contention is based in part on the contents of an affidavit filed in support of the motion to stay. The affidavit recites that as a result of the work stoppage which occurred February 13 and 14, 1959 certain grievances are pending, pursuant to the grievance and arbitration procedure of the contract, involving disciplinary action taken against some of the individual defendants for allegedly fomenting, assisting and participating in such strike or

---

1. Plaintiff states that in order to avoid any question of finality of the District Court's orders both an interlocutory appeal (No. 13092) and a regular appeal (No. 13136) were perfected. Plaintiff's appeals have been consolidated.

2. Defendants' appeal was perfected pursuant to 28 U.S.C.A. § 1292(a) (1).

work stoppage, and that the disputes which caused the eight previous work stoppages referred to in Count III of plaintiff's complaint have all been disposed of pursuant to the grievance procedure of the contract except the question of the compensation of one worker, which is the subject of a pending grievance. A counter-affidavit filed by plaintiff discloses that the grievances of the individual defendants were filed subsequent to the work stoppage of February 13 and 14, 1959 and involve either the three pay claims aggregating $2.19 concerning deductions made by the plaintiff from compensation of the employees because of their reporting for work late, which deductions allegedly caused the work stoppage, or relate to the plaintiff's refusal to compensate individual defendants for time spent processing grievances contrary to disciplinary restrictions imposed by plaintiff, because of the work stoppage, on their engaging in such activity. It is further recited that the parties have been unable to agree on a settlement or disposition of the grievances, that both the Union and the plaintiff have named arbitrators but that a third or impartial arbitrator had not as yet been selected.

The collective bargaining agreement here involved is for a term beginning June 15, 1957 and continuing to June 14, 1959 and thereafter unless terminated by either party on sixty-days' written notice. The agreement contains both a no-strike clause and an arbitration clause.

The no-strike clause is as follows:

"Union further agrees that during the term of this Agreement there shall be no strikes or work stoppages:

"(1) For any cause which is or may be the subject of a grievance under Article XXVI of this Agreement, or

"(2) For any other cause, except upon written notice by Union to Employer provided:

"(a) That Employer within thirty (30) days from the receipt of such notice will meet with the representatives of the Union and endeavor to reach an agreement on the matter in dispute.

"(b) In the event an agreement is not reached within forty-five (45) days after the expiration of the thirty (30) day period specified in (a) hereof, Union, upon the expiration of such forty-five (45) day period, may exercise its right to strike by serving fifteen (15) days' notice in writing upon Employer of Union's intention to strike at the expiration of such notice".

Article XXVI of the agreement sets forth the grievance and arbitration procedure. It defines "grievance" as follows:

"A grievance is defined to be any difference regarding wages, hours, or working conditions between the parties hereto or between the Employer and an employee covered by this working agreement which might arise within any plant or within any region of operation."

The Article then sets forth detailed provisions as to how "grievances" are to be processed and considered culminating with provisions for arbitration if the grievance is not resolved at one of the earlier stages of the procedure.

We are mindful of the congressional policy in favor of the settlement of disputes in the labor-management field through the machinery of arbitration. This was recognized in Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 456, 77 S.Ct. 912, 1 L.Ed.2d 972, and since reconfirmed in United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582–583, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 in which the Supreme Court admonished that in the interpretation of arbitration clauses of collective bargaining agreements "[d]oubts should be resolved in favor of coverage". Nevertheless Warrior also affirms that "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dis-

pute which he has not agreed so to submit".

■ Defendants' reliance upon Warrior and the similar teachings found in United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 and United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424, is misplaced. The arbitration clause here under consideration contracts to submit to arbitration only a grievance which is a "difference regarding wages, hours or working conditions". The claim of the employer for damages relates to neither wages, hours nor working conditions. It does not involve a subject which it has contracted to submit to arbitration. The arbitration clauses considered in Warrior and American Manufacturing were broad in scope. They called for arbitration of all disputes or differences as to the "meaning" and "application" of the agreement. Likewise distinguishable by reason of the broad scope of the arbitration clauses involved are Signal-Stat Corp. v. Local 475, United Electrical, Radio and Machine Workers, 2 Cir., 235 F.2d 298; Tenney Engineering, Inc. v. United Electrical, Radio and Machine Workers, 3 Cir., 207 F.2d 450 and Lewittes & Sons v. United Furniture Workers, D.C.S.D.N.Y., 95 F.Supp. 851 cited by defendants. We conclude that giving the language of the arbitration clause here under consideration its broadest scope it is not susceptible of an interpretation that covers the asserted dispute. Cf. Drake Bakeries, Inc. v. Local 50, American Bakery and Confectionery Workers, International, AFL-CIO, 2 Cir., 287 F.2d 155; International Union United Furniture Workers of America v. Colonial Hardwood Flooring Co., 4 Cir., 168 F.2d 33, 35; Cuneo Press, Inc. v. Kokomo Paper Handlers' Union No. 34, 7 Cir., 235 F.2d 108, 111, certiorari denied 352 U.S. 912, 77 S.Ct. 149, 1 L.Ed. 2d 119; United Electrical, Radio and Machine Workers of America v. Miller

Metal Products, Inc., 4 Cir., 215 F.2d 221; Hoover Motor Express Co. v. Teamsters, Chauffeurs, etc. Union, 6 Cir., 217 F.2d 49, 53; International Union, etc. v. Benton Harbor Malleable Industries, 6 Cir., 242 F.2d 536, 540–541, certiorari denied 355 U.S. 814, 78 S.Ct. 15, 2 L.Ed. 2d 31.

■ Nor are we impressed with defendants' contention that because certain grievances of the individual defendants have been submitted to arbitration under the provisions of the agreement plaintiff is bound to submit its claim for damages to arbitration. The employee grievances involve the pay deductions which precipitated the work stoppage and disciplinary restrictions imposed for participation therein. That some of the underlying issues which are or may become involved in the determination of those grievances may also possibly become an issue to be resolved in the ultimate adjudication of plaintiff's suit—the issues of which are yet to be framed by pleadings as yet unfiled—does not in our opinion require a stay of plaintiff's action. Plaintiff has not submitted the subject matter of its action to arbitration, nor consented to such arbitration, merely because in conformity with its contract it is arbitrating employee grievances which involve some factors or "issues" in common with those which could possibly arise in the suit. The fact that a grievance under arbitration and a court action may share some issue or factor in common does not establish identity of subject matter. What plaintiff has submitted to arbitration under its contract to arbitrate are matters different from the subject matter of its suit. It has not agreed to arbitrate the latter—and submission to arbitration is a matter of contract.

We conclude that the District Court did not err in denying a stay of plaintiff's action.

■ The District Court's dismissal of Count II of the complaint was based on the view that under Section 301 of the Labor-Management Relations Act (29

U.S.C.A. § 185)[3] suits of the nature alleged in Count II are no longer cognizable in state or federal courts. In our opinion the District Court erred in so concluding and in dismissing Count II. The 24 individuals named in Count II are employees of the plaintiff as well as members and officers of the Local Union and agents of the International. They were in the bargaining unit covered by the collective agreement. Whether these individuals are regarded "somewhat as" third party beneficiaries to the collective contract [4] or that contract, though not signed by or naming them, is one directly between them and the employer, negotiated by their agent, because incorporated in the individual contract of hire [5], they are bound by its provisions. Young v. Klausner Cooperage Co., 164 Ohio St. 489, 132 N.E.2d 206; Owens v. Press Publishing Co., 20 N.J. 537, 120 A.2d 442; McLean Distributing Co. v. Brewery and Beverage Drivers et al., 254 Minn. 204, 94 N.W. 2d 514, certiorari denied 360 U.S. 917, 79 S.Ct. 1436, 3 L.Ed.2d 1534. The individual defendants are bound by the no-strike clause of the agreement. We do not mean to imply that the individual defendant is liable for breaches by others which he did not induce but he is liable for his own breach and any he does induce. And we recognize that each of the individual defendants may have no duty to remain in plaintiff's employ for any given period. But, under the contract, he does have a binding contractual obligation not to strike or engage in a work stoppage in violation of the no-strike clause. And he has a duty not to induce others to do so.

Count II alleges individual breaches by the 24 named defendants as well as their inducement of individual breaches by other employees. The 24 defendants are union officers presumably familiar with the terms of the agreement, including its no-strike clause. In considering a motion to dismiss, the allegations of the complaint must be viewed in the light most favorable to the plaintiff, and all facts well pleaded must be admitted and accepted as true. Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80. And we are not now concerned with what defenses might exist; what issues may be framed by subsequent pleading, nor with what the proof to be adduced may establish as to liability or nonliability of any of the defendants. If any set of facts provable under the allegations of Count II warrants recovery under accepted principles of law it states a cause of action. Central Ice Cream Co. v. Golden Rod Ice Cream Co., 7 Cir., 257 F.2d 417.

Count II seeks to hold the individual defendants liable for their own acts in breach of the contract. They are under a contractual obligation not to participate in a strike or work stoppage in violation of the no-strike clause. The Count alleges such participation.

3. Hereinafter referred to as Section 301, and which, in so far as pertinent, reads as follows:

"(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

"(b) Any labor organization which represents employees in an industry affecting commerce as defined in this chapter and any employer whose activities affect commerce as defined in this chapter shall be bound by the acts of its agents. Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States. Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets. * * *"

4. Cf. J. I. Case Co. v. N. L. R. B., 321 U.S. 332, 336, 64 S.Ct. 576, 88 L.Ed. 762.

5. Cf. Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 3 Cir., 210 F.2d 623, 627, affirmed 348 U.S. 437, 75 S.Ct. 488, 99 L. Ed. 510.

In addition Count II alleges that the individual defendants induced other employees to breach the agreement. Indiana, under the doctrine of Lumley v. Gye, 2 El. & Bl. 216, 118 Eng.Reprint 749, recognizes liability for malicious interference with or inducement of breach of a contract and it has applied that doctrine in a situation where a defendant charged with inducing a breach of contract is a party to the contract. Wade v. Culp, 107 Ind.App. 503, 23 N.E.2d 615.[6]

Thus, apart from alleging a contract liability of each individual defendant for participating in a work stoppage in violation of his contractual obligation not to do so, Count II also alleges a tort liability recognized under Indiana law—tortious interference with and inducement of breach of contract obligations.

We are unable to agree with the defendants that Section 301 precludes assertion of the liability of individual employees bound by a collective agreement for participating in or inducing a work stoppage in violation of the agreement's no-strike clause where the union is being sued for an alleged breach in connection with the same work stoppage. The provision that a judgment against a labor organization shall not . be enforceable against its members does not in and of itself preclude action against or recovery from individual members for their individual breaches of contract. Of course there can be but one satisfaction. The observation in Lewis v. Benedict Coal Corp., 361 U.S. 459, 470, 80 S.Ct. 489, 496, 4 L.Ed.2d 442, relied upon by defendants, that Section 301 evidences a congressional intention that the union, like a corporation, should be the sole source of recovery was made with respect to an "injury inflicted by it", and in an entirely different context from that here involved. There are strikes or work stoppages without union participation, without the union having "called a strike" or being responsible therefor. And there can be work stoppages caused and participated in by some employees but not others.

Defendants place heavy reliance on San Diego Building Trades Council, etc. v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 780, 3 L.Ed.2d 775. But that case involved a determination of whether a state court had jurisdiction to award damages arising out of a union activity—peaceful recognition picketing—which the Supreme Court found "arguably within the compass of § 7 or § 8 of the [National Labor Relations] Act"[7] and thus within a narrow area withdrawn from possible state activity and within which state jurisdiction must yield. The conduct of the individual defendants alleged in Count II of the complaint in the instant case is neither a protected activity under § 157 nor an unfair labor practice embraced within the scope of § 158 of 29 U.S.C.A. A strike or work stoppage in violation of a no-strike clause of a collective bargaining agreement is not an activity protected by federal law. And as conflict is the touchstone of pre-emption the rationale of Garmon is inapplicable to bar prosecution of Count II.

In Wilson & Co. v. United Packinghouse Workers of America, D.C.Iowa, 181 F.Supp. 809, relied on by defendants, the individual defendant officers of the union were sued individually and as representative of the class and membership of the Local Union in a count sounding in tort only, the claimed tort (at page 818) "being the inducing of a breach of the collective bargaining agreement". Unlike Count II of the complaint here under consideration the individual defendants were not sued in a count sounding in contract as well as in tort. But, apart from these differences, we are not disposed to follow the holding of Wilson that Section 301 precludes maintenance of an action for inducement of breach of contract against

---

**6.** In Wade v. Culp the defendant Wade, a party to the contract, was sued along with other defendants, strangers to the contract, for interfering with and inducing a breach. Cf. Worrie v. Boze, 198 Va. 533, 95 S.E.2d 192, 63 A.L.R.2d 1315 and Motley, Green & Co. v. Detroit Steel & Spring Co., C.C.S.D.N.Y., 161 F. 389.

**7.** 29 U.S.C.A. §§ 157 and 158.

the union officers where the union also is sued for breach of contract under Section 301. That the individual defendants in Count II are officers of the Union defendants sued in Count I does not in our judgment insulate them from liability as employees of plaintiff, a status they also occupy, on the theory advanced by defendants and employed in Wilson that as officers of the Union they should be immune from liability for inducing a breach of *its* contract. The doctrine of Hicks v. Haight, 171 Misc. 151, 11 N.Y.S.2d 912, that an officer of a corporation is not liable for inducing a breach of the corporation's contract is relied on by analogy to support the claimed immunity. But the New York rule is not without its limitations and is not recognized in a number of jurisdictions (Fletcher on Corporations, Vol. 3, 1947 Rev.Ed. § 1001, pp. 501, 502 and 1960 Cum.Supp. pp. 56–58). In addition the no-strike clause of the collective agreement is binding on the individual defendants as employees whereas the officers or stockholders of a corporation are not personally obligated on a contract of the corporation. A concise answer to Wilson is found in Baun v. Lumber and Sawmill Workers Union et al., 46 Wash.2d 645, 284 P.2d 275, 286, where it was succinctly pointed out:

> "What the statute relied on [Section 301] says * * * is that a judgment against a labor organization shall not be enforcible against its members, which is a far cry from saying that a judgment cannot be recovered against individual members in consequence of their individual actions. The argument is a complete *non sequitur.*"

It is our considered judgment that Count II stated a cause of action cognizable in the courts of Indiana and, by diversity, maintainable in the District Court. It was error to dismiss Count II.

The District Court's dismissal of Count III was predicated on its conclusion that the Norris-LaGuardia Act[8] precludes the injunctive relief sought. Plaintiff seeks a permanent injunction operating *in futuro* against all of the defendants, and all to whom notice thereof might come, restraining them from any disruption of or interference with normal employment, operation or production in connection with any dispute which might be the subject of a grievance under the grievance procedure of the collective agreement, or any extension thereof, or any other such agreement containing like or similar provisions.

Norris-LaGuardia, subject to exceptions not here pertinent, withdraws jurisdiction from federal courts to issue an injunction in a case involving or growing out of a labor dispute. It is clear from the specific allegations of Count III that the conduct and work stoppages sought to be restrained are those which result from or involve labor disputes—differences concerning "wages, hours or working conditions" which are subject to the grievance and arbitration procedures. And the relief sought would clearly prohibit persons "participating or interested in such [a] dispute" from "[c]easing or refusing to perform any work * * *".

In Order of Railroad Telegraphers et al. v. Chicago & North Western Railway Co., 362 U.S. 330, 335, 80 S.Ct. 761, 764, 4 L.Ed.2d 774, the Supreme Court after referring to the prohibitions of Section 4 of the Norris-LaGuardia Act and observing that said Act defines a labor dispute as including "any controversy concerning terms or conditions of employment * * *" stated:

> "Unless the literal language of this definition is to be ignored, it squarely covers this controversy. Congress made the definition broad because it wanted it to be broad. There are few pieces of legislation where the congressional hearings, committee reports, and the language in the legislation itself more clearly point to the necessity for giving an Act a construction that will protect

8. 29 U.S.C.A. § 101 and § 104.

the congressional policy the Act adopted."

It is implicit in the teachings of Railroad Telegraphers that it is not within a court's prerogatives to impose limitations on the clearly expressed congressional policy embodied in Norris-LaGuardia and that the Act removed the possibility of use of injunctive powers in any labor dispute absent a contrary mandate from the Congress. In Brotherhood of Railroad Trainmen v. Chicago River & Indiana Railroad Co., 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622, relied upon by the plaintiff, the Court had earlier found such a mandate to exist in the need to accommodate Norris-LaGuardia and the Railway Labor Act, 45 U.S.C.A. § 151 et seq. so that the obvious purpose of each of these statutes adopted as a pattern of labor legislation is preserved. The exception to the ban of Norris-LaGuardia there recognized was grounded on explicit provisions of the Railway Labor Act subjecting "minor disputes" to compulsory arbitration and declaring the Adjustment Board's decision "binding" upon both parties in order to avoid any interruption of transportation and attendant injury to the public because of such class of disputes. Railroad Telegraphers affirms that the doctrine of Chicago River operates within the narrowly confined limits of those requirements and does not even encompass other disputes in the field of railway labor-management so as to authorize injunctive relief against strikes or work stoppages involving other matters. Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas R. Co., 363 U.S. 528, 80 S.Ct. 1326, 4 L.Ed.2d 1379.

■ Thus Chicago River is not a controlling precedent here and on the facts here alleged we find no mandate in Section 301 to which Norris-LaGuardia must accommodate. Lincoln Mills does not say that Section 301 authorizes injunctive relief clearly prohibited by Norris-La-

Guardia. Compelling arbitration is not prohibited by Norris-LaGuardia—enjoining strikes or work stoppages is. And there is nothing in the general language of Section 301, nor its purposes, as disclosed by the legislative history,[9] which evidences conflict with Norris-LaGuardia.

In so concluding we find ourselves in disagreement with Chauffeurs, Teamsters and Helpers Local Union No. 795 v. Yellow Transit Freight Lines, 10 Cir., 282 F.2d 345,[10] but supported by A. H. Bull Steamship Co. v. Seafarers' International Union, 2 Cir., 250 F.2d 326.

■ Plaintiff contends that inasmuch as Count III contained a prayer that the court "declare the rights of the parties" it was error for the District Court to dismiss the Count even though injunctive relief is barred. We perceive no error in this connection. Count III does pray a declaration that the no-strike and grievance procedure clauses are legal, binding and enforceable. But no allegation is made that a controversy exists between the parties as to the validity or enforceability of either clause. The Count sets forth alternative conclusions that the conduct of defendants "shows" either that they do not regard the provisions valid and binding or deliberately violated them. Such allegation fails to charge the existence of controversy over validity or enforceability requisite to support an action for declaratory judgment.

The thoroughness of the briefs of the parties has been of material aid to the Court and although we have not made specific reference to some of the many authorities cited and analyzed therein we have considered each of the arguments advanced by the parties in support of their respective positions on the issues and discussed those we deemed necessary.

We conclude that the District Court did not err in denying the motion to stay the

9. See legislative history appended to Lincoln Mills, 353 U.S. 448, 485–546, 77 S. Ct. 912, 923, 1 L.Ed.2d 972.

10. Certiorari granted 364 U.S. 931, 81 S.Ct. 378, 5 L.Ed.2d 364.

action nor in dismissing Count III of the complaint but did err in dismissing Count II.

In Appeal No. 13137 the order of the District Court denying defendants' motion to stay is affirmed.

In appeal Nos. 13092 and 13136 that portion of the judgment order of the District Court dismissing Count III of the complaint is affirmed and that portion of the judgment order dismissing Count II of the complaint and dismissing all individual defendants from the action is reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.

No. 13137 affirmed, nos. 13092 and 13136 affirmed in part, reversed in part and remanded.