338 F.2d 837
 AMERICAN DREDGING COMPANY, Appellant
v.
LOCAL 25, MARINE DIVISION, INTERNATIONAL UNION OF OPERATING ENGINEERS, AFL-CIO and Stephen J. Leslie, Joseph F. Erhmann, William F. Zenga and Vincent Motzel, Individually and as Trustees.
 No. 14710.
 United States Court of Appeals Third Circuit.
 Argued February 20, 1964.
 Decided October 30, 1964.
 Rehearing Denied December 14, 1964.
 
 Harvey B. Levin, Lazarus & Levin, Philadelphia, Pa. (Krusen Evans & Byrne, Philadelphia, Pa., on the brief), for appellant.
 Marshall J. Seidman, Weiner, Basch, Lehrer & Cheskin, Philadelphia, Pa., for appellee.
 Before KALODNER and HASTIE, Circuit Judges and KIRKPATRICK, District Judge.
 KALODNER, Circuit Judge.
 
 
 1
 The District Court here[1] denied the plaintiff's motion to remand to the state court from which it had been removed, a suit, based solely on a state-created right, to enjoin the defendant union's violation, in the course of a labor dispute, of the "no-strike" provision of its collective bargaining agreement, and subsequently denied the plaintiff's motion for injunctive relief.[2] It premised its denial of remand on the ground that it had original jurisdiction under § 301(a) of the Labor Management Relations Act,[3],[4] of a suit for violation of a labor contract, and § 1441 of the Removal Statute[5] permits the removal to a federal district court of a civil action of which it has original jurisdiction under a law of the United States. It based its denial of plaintiff's motion for an injunction on the ground that it was "without power to grant injunctive relief because of § 4 of Norris-LaGuardia [Norris LaGuardia Act],[6] since this is a `case involving or growing out of a labor dispute,'[7] within the meaning of the Act. Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 182 S. Ct. 1328, 8 L.Ed.2d 440 (1962)."
 
 
 2
 The sum of the District Court's view[8] is that the Norris-LaGuardia limitations on jurisdiction of federal district courts, which the Supreme Court held in Sinclair extends to § 301 in cases growing out of labor disputes, do not divest these courts of subject matter jurisdiction of such cases, viz., the capacity to take cognizance of, or to entertain, but merely strip them of power to grant injunctive relief.
 
 
 3
 The view stated disregards the critical fact that in Sinclair, the Supreme Court, in holding that the jurisdiction conferred by § 301 was subject to the jurisdictional limitations enacted by the earlier Norris-LaGuardia Act, expressly ruled at page 215, 82 S.Ct. at page 1339:
 
 
 4
 "The District Court was correct in dismissing Count 3 of petitioner's complaint for lack of jurisdiction under the Norris-LaGuardia Act."[9] (emphasis supplied)
 
 
 5
 We can only construe the phrase "lack of jurisdiction" as embracing within its ambit subject matter jurisdiction and accordingly hold that the District Court erred in failing to grant the motion to remand in the instant case on its reasoning that it had subject matter jurisdiction under § 301 within the "original jurisdiction" provisions of § 1441. It merits observation that the background factual situation which constituted the basis of the injunctive action in Sinclair was on all fours with that existing here, as appears in Note 9.
 
 
 6
 It may be pointed out anent the holding in Sinclair, that the Supreme Court, some 36 years earlier, in General Investment Company v. New York Central Railroad Company, 271 U.S. 228, p. 230, 46 S.Ct. 496, p. 497, 70 L.Ed. 920 (1926) succinctly defined jurisdiction as follows:
 
 
 7
 "By jurisdiction we mean power to entertain the suit, consider the merits and render a binding decision thereon * * *." (emphasis supplied)
 
 
 8
 It is fair to assume that Congress in its use of the word "jurisdiction" in the Norris-LaGuardia Act in 1932 was aware of the Supreme Court's definition of "jurisdiction" six years earlier, in the foregoing case.
 
 
 9
 The Norris-LaGuardia Act in its title declared that it was:
 
 
 10
 "AN ACT
 
 
 11
 "To amend the Judicial Code and to define and limit the jurisdiction of courts sitting in equity, and for other purposes."*
 
 
 12
 In Section 2 — "Declaration of the public policy of the United States" — it was stated in relevant part:
 
 
 13
 "In the interpretation of this Act and in determining the jurisdiction and authority of the courts of the United States, as such jurisdiction and authority are herein defined and limited, the public policy of the United States is hereby declared as follows:
 
 
 14
 "* * * therefore, the following definitions of, and limitations upon, the jurisdiction and authority of the courts of the United States are hereby enacted." (emphasis supplied).
 
 
 15
 In State of Minnesota v. Northern Securities Company, 194 U.S. 48, 24 S.Ct. 598, 48 L.Ed. 870 (1904) the Supreme Court made it clear that the term jurisdiction as used in the Removal Statute means the power to take cognizance of the case upon removal from a state court and to decide it upon its merits. There, an action was brought by the State of Minnesota against the defendants, to annul an agreement and suppress a combination alleged to exist between the defendant corporations, upon the grounds that the agreement and combination were in violation of the laws of Minnesota, and of the anti-trust laws of the United States. The action was removed from the state court to the circuit court of Minnesota on the ground that it was "one arising under the Constitution and laws of the United States," and was subsequently dismissed by the circuit court on its merits.
 
 
 16
 The Supreme Court sua sponte raised the question as to whether the case was removable although all the parties to the action "deemed the case a removable one."
 
 
 17
 In so doing it stated at page 63, 24 S.Ct. at page 601:
 
 
 18
 "If the record does not affirmatively show jurisdiction in the circuit court, we must, upon our own motion, so declare, and make such order as will prevent that court from exercising an authority not conferred upon it by statute. * * *
 
 
 19
 "We proceed, therefore, to inquire whether the circuit court could take cognizance of this case upon removal from the state court, and make a final decree upon the merits." (emphasis supplied)
 
 
 20
 After noting that it was the "general policy of these acts [removal statutes], manifest upon their face, and often recognized by this court, to contract the jurisdiction of the circuit [district] courts of the United States", it was said at pages 64-65, 24 S.Ct. at page 602:
 
 
 21
 "These cases establish, beyond further question in this court, the rule that, under existing statutes regulating the jurisdiction of the courts of the United States, a case cannot be removed from a state court as one arising under the Constitution or laws of the United States, unless the plaintiff's complaint, bill, or declaration shows it to be a case of that character. `If it does not appear at the outset,' this court has quite recently said, `that the suit is one of which the circuit court at the time its jurisdiction is invoked could properly take cognizance, the suit must be dismissed.' Third Street & Suburban R. Co. v. Lewis, 173 U.S. 457, 460, 43 L.ed. 766, 767, 19 Sup.Ct. Rep. 451." (emphasis supplied)
 
 
 22
 It is of compelling significance here that in Northern Securities, the Supreme Court reversed the denial of remand below on the ground that the removed action did not "really and substantially involve a dispute or controversy within the jurisdiction of the circuit court for the purposes of a final decree * * *" and, "That being the case, the circuit court, following the mandate of the statute [predecessor of the present § 1447 (c)], should not have proceeded therein, but should have remanded the cause to the state court." (emphasis supplied)
 
 
 23
 In the instant case the complaint alleged that the union had violated the "no-strike" clause of its collective bargaining agreement in the course of a labor dispute, and thus it appeared "at the outset" that the District Court could not, under Sinclair, "properly take cognizance of this case upon removal from the state court, and make a final decree upon the merits."
 
 
 24
 It cannot be gainsaid that had the plaintiff initially brought suit in the District Court under § 301, alleging in its complaint a cause of action for breach of its collective bargaining agreement, in the course of a labor dispute, and praying for injunctive relief, that the action would have been dismissed for lack of jurisdiction under Sinclair.
 
 
 25
 To say then that a District Court has subject matter jurisdiction[10] of a cause of action, so as to authorize it to take cognizance of it under the provisions of the Removal Statute, when it does not in the first place have jurisdiction to entertain and decide it upon its merits, is to give sanction to an exercise in futility.
 
 
 26
 Or putting it another way, for a court to say that it has subject matter jurisdiction enabling it to take cognizance of a case, and then to rule that although the case has merit, it is without judicial power, viz., jurisdiction, to grant a final decree on the merits, is to pursue, what Mr. Justice Frankfurter once characterized, in another context, "a fox-hunting theory of justice that ought to make Bentham's skeleton rattle,"[11] and to do violence to the holding in General Investment Company v. New York Central Railroad Company, supra, that "By jurisdiction we mean power to entertain the suit, consider the merits and render a binding decision thereon."[12]
 
 
 27
 It has been settled for almost a century that federal statutes should be construed and applied so as to avoid "injustice" or "absurd consequences."
 
 
 28
 In United States v. Kirby, 7 Wall. 482, pp. 486, 487, 74 U.S. 482, pp. 486, 487, 19 L.Ed. 278 (1869) it was said:
 
 
 29
 "All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. * * * The reason of the law, in such cases, should prevail over its letter."[13]
 
 
 30
 In United States v. Katz, 271 U.S. 354, p. 357, 46 S.Ct. 513, p. 514, 70 L.Ed. 986 (1926) in which Kirby was cited with approval, it was said:
 
 
 31
 "All laws are to be given a sensible construction; and a literal application of a statute, which would lead to absurd consequences, should be avoided whenever a reasonable application can be given to it, consistent with the legislative purpose. * * * In ascertaining that purpose, we may examine the title of the act (citing cases) * * * and the legislative scheme or plan by which the general purpose of the act is to be carried out. (citing cases)."
 
 
 32
 Here the denial of remand not only led to the "absurd consequence" of leaving the District Court with a case on its judicial hands without judicial power to "make a final decree on its merits", but also to these serious consequences:
 
 
 33
 It rendered an "injustice" to the plaintiff in that it deprived it of the benefit of the temporary injunctive relief granted by the state court under state law, prior to the case's removal, and foreclosed it from the available remedy of a permanent injunction; it ousted the state court of its jurisdiction to apply state law in a field not pre-empted by Congress, in contravention of the historic comity doctrine which proscribes avoidable direct conflicts between federal and state courts; and it thwarted the Congressional policy intended to have § 301(a) "supplement" and "not to displace" or "to encroach upon the existing jurisdiction of the state courts" in suits for violation of collective bargaining contracts in industries affecting interstate commerce. Charles Dowd Box Co., Inc. v. Courtney, 368 U.S 502, 509, 511, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962).
 
 
 34
 Elaboration of these serious consequences must yield the right of way to the resolution of this transcending question:
 
 
 35
 Assuming, arguendo, that the Norris-LaGuardia Act did not deprive the District Court of § 301(a) subject matter jurisdiction, was the action here "founded on a claim or right arising under the Constitution, treaties or laws of the United States", so as to make it removable, "without regard to the citizenship or residence of the parties", within the meaning of § 1441(b) of the Removal Statute?
 
 
 36
 If the answer to that question is that the removed state action was not "founded on a claim or right arising under" § 301(a), it will require the reversal of the denial of remand, independent of the resolution of all the other questions presented by this appeal.
 
 
 37
 In 1821 the Supreme Court was first called upon to decide when a case "arises under a law of the United States" in the landmark case of Cohens v. Virginia, 6 Wheat. 264, 5 L.Ed. 257.
 
 
 38
 Speaking for the Court, Mr. Chief Justice Marshall there said (p. 379):
 
 
 39
 "A case in law or equity consists of the right of the one party, as well as of the other, and may truly be said to arise under the constitution or a law of the United States, whenever its correct decision depends on the construction of either." (emphasis supplied)
 
 
 40
 It is of compelling significance here that in so holding the Supreme Court rejected the contention that a case arises under the Constitution or a law of the United States merely because it is founded on a right conferred by the Constitution or a federal law.
 
 
 41
 In doing so the Chief Justice said (p. 379):
 
 
 42
 "If it [the intention of the contention] be to maintain that a case arising under the constitution, or a law, must be one in which a party comes into court to demand something conferred on him by the constitution or a law, we think the construction too narrow." (emphasis supplied)
 
 
 43
 In amplification of the rule stated, Mr. Chief Justice Marshall, speaking for the Court, in Osborn v. Bank of United States, 9 Wheat. 738, 822, 6 L.Ed. 204 (1824), declared that a case arises under the constitution or laws of the United States when "the title or right set up by the party may be defeated by one construction of the constitution or law of the United States and [or] sustained by the opposite construction." (emphasis supplied)
 
 
 44
 More than a half century later, the Supreme Court, in Little York Gold-Washing and Water Company, Limited v. Keyes, 96 U.S. 199, 24 L.Ed. 656 (1878), applied the principles declared in Cohens and Osborn, in construing a provision in the Removal Act of 1875,[14] for removal of suits "arising under the Constitution or laws of the United States."
 
 It there held (pp. 203-204):
 
 45
 "A cause cannot be removed from a State Court simply because, in the progress of the litigation, it may become necessary to give a construction to the Constitution or laws of the United States. The decision of the case must depend upon that construction. The suit must, in part at least, arise out of a controversy between the parties in regard to the operation and effect of the Constitution or laws upon the facts involved.
 
 
 46
 * * * * * *
 
 
 47
 "Before, therefore, a circuit court can be require to retain a cause under this jurisdiction, it must in some form appear upon the record, by a statement of facts, `in legal and logical form,' such as is required in good pleading, 1 Chit.Pl. 213, that the suit is one which `really and substantially involves a dispute or controversy' as to a right which depends upon the construction or effect of the Constitution, or some law or treaty of the United States." (emphasis supplied)
 
 
 48
 In Starin v. New York City, 115 U.S. 248, 6 S.Ct. 28, 29 L.Ed. 388 (1885) orders of the circuit court remanding a case which had been removed from a New York court, were appealed on the ground that the suit was one arising under the Constitution and laws of the United States.
 
 
 49
 With respect to that contention the Court said (p. 257, 6 S.Ct. p. 31):
 
 
 50
 "We will first consider whether the suit is one which arises under the constitution or laws of the United States; for, if it is not, the order to remand was right * * *.
 
 
 51
 "The character of a case is determined by the questions involved. Osborn v. Bank of U. S., 9 Wheat. 824 [22 U.S. 824, 6 L.Ed. 224]. If from the questions it appears that some title, right, privilege, or immunity, on which the recovery depends, will be defeated by one construction of the constitution or a law of the United States, or sustained by the opposite construction, the case will be one arising under the constitution or laws of the United States, within the meaning of that term as used in the act of 1875 [the then extant Removal Act]; otherwise not. Such is the effect of the decisions on this subject."
 
 
 52
 In affirming the circuit court's remand of the removed case, the Court further stated (p. 258, 6 S.Ct. p. 32):
 
 
 53
 "The decision of these questions [presented by the removed case] does not depend on the constitution or laws of the United States. There is nothing in the constitution or laws of the United States entering into the determination of the cause, which, if construed one way, will defeat the defendants, or, in another, sustain them." (emphasis supplied)
 
 
 54
 In Shulthis v. McDougal, 225 U.S. 561, 569, 32 S.Ct. 704, 706, 56 L.Ed. 1205 (1912) the Court, following its declaration that "jurisdiction cannot rest on any ground that is not affirmatively and distinctly set forth" in the complaint, said:
 
 
 55
 "A suit to enforce a right which takes its origin in the laws of the United States is not necessarily, or for that reason alone, one arising under those laws, for a suit does not so arise unless it really and substantially involves a dispute or controversy respecting the validity, construction, or effect of such a law, upon the determination of which the result depends." (emphasis supplied)[15]
 
 
 56
 In Gully v. First National Bank in Meridian, 299 U.S. 109, at p. 115, 57 S. Ct. 96, at p. 99, 81 L.Ed. 70 (1936), where the doctrine of Shulthis, Starin, and its predecessors, was cited and applied in reversing for failure to remand a removed case to the state courts, it was said:
 
 
 57
 "Not every question of federal law emerging in a suit is proof that a federal law is the basis of the suit."
 
 
 58
 At pages 112-113, 57 S.Ct. at page 97-98 the Court said:
 
 
 59
 "How and when a case arises `under the Constitution or laws of the United States' has been much considered in the books. Some tests are well established. To bring a case within the [removal] statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one of the plaintiff's cause of action (citing Starin and First National Bank of Canton, Pa. v. Williams, 252 U.S. 504, 512, 40 S.Ct. 372, 64 L.Ed. 690 [1920]). The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another (citing cases). A genuine and present controversy, not merely a possible or conjectural one, must exist with reference thereto (citing cases), and the controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal. (citing cases)."[16] (emphasis supplied) What was said, three years ago, in Pan American Petroleum Corporation v. Superior Court of Delaware In and For New Castle County, 366 U.S. 656, 662-663, 81 S.Ct. 1303, 6 L.Ed.2d 584 (1961) is of significant pertinence in the instant case.
 
 
 60
 There, in re-affirming the doctrines spelled out in Gully, these settled jurisdictional principles were stated and applied:
 
 
 61
 1. "[Q]uestions of exclusive federal jurisdiction and ouster of jurisdiction of state courts are, under existing jurisdictional legislation, not determined by ultimate substantive issues of federal law."
 
 
 62
 2. "The answers depend on the particular claims a suitor makes in a state court — on how he casts his action. Since `the party who brings a suit is master to decide what law he will rely upon,' The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716."
 
 
 63
 3. It is "immaterial * * * that the plaintiff could have elected to proceed on a federal ground", and "if the plaintiff decides not to invoke a federal right, his claim belongs in a state court."
 
 
 64
 4. "It is settled doctrine that a case is not cognizable in a federal trial court, in the absence of diversity of citizenship, unless it appears from the face of the complaint that determination of the suit depends upon a question of federal law. * * * Apart from diversity jurisdiction, `a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action. * * * and the controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal. * * *' Gully v. First National Bank, 299 U.S. 109, 112-113, 57 S.Ct. 96, 97, 81 L.Ed. 70." (emphasis supplied).
 
 
 65
 Applying the principles stated to the instant case we can only conclude that it was not one "arising under" § 301(a), or any other law of the United States, so as to permit removal under § 1441, since the complaint was cast solely on a state-created right to bring suit for violation of a collective bargaining agreement and sought only a remedy available under state law, and there was nothing in the complaint which even remotely suggested that it asserted a claim based on § 301(a), or that it presented a "dispute or controversy respecting the validity, construction, or effect" of § 301 (a), "upon the determination of which the result [of the suit] depends."[17]
 
 
 66
 We now revert to the "serious consequences", earlier highlighted, which flowed from the denial of remand.
 
 
 67
 That denial effectively wrote "finis" to the plaintiff's action for injunctive relief, available in the state courts, but unavailable in the federal courts. It was an "injustice" to the plaintiff because it denied it its right, under settled law, to be "master of its own case", viz., the right to cast its action on state-created rights rather than on rights available under federal law, to wit, § 301(a); and it deprived it of the right to proceed in a state court despite the specific holding in Dowd that Congress, in enacting § 301(a), did not make that statute's jurisdiction "exclusive",[18] nor did it intend "to deprive a party to a collective bargaining contract of the right to seek redress for its violation in an appropriate state tribunal."[19]
 
 
 68
 The denial of remand ousted the state court of its jurisdiction not only in contravention of the historic comity doctrine which proscribes avoidable conflicts between federal and state courts,[20] but in disregard of Dowd's specific holding that Congress did not intend in § 301(a) "to deprive the state courts of a substantial segment of their established jurisdiction over contract actions,"[21] and "expressly intended not to encroach upon the existing jurisdiction of the state courts,"[22] (emphasis supplied) in suits for violation of collective bargaining agreements in industries affecting interstate commerce.
 
 
 69
 The specific question presented in Dowd, as the Court put it, was "whether this federal statute [§ 301(a)] operates to divest a state court of jurisdiction over a suit for violation of a contract between an employer and a labor organization."[23] The question arose by reason of the fact that a Massachusetts trial trial court had rejected an attack upon its jurisdiction in an action by a union against an employer seeking money damages for violation of a collective bargaining agreement, and had subsequently rendered a money judgment in favor of the union. The Supreme Judicial Court of Massachusetts affirmed,[24] ruling that § 301(a) had not granted the federal courts exclusive jurisdiction over suits for violation of labor contracts in industries affecting interstate commerce.
 
 
 70
 In affirming the Massachusetts Court's ruling, the Court said:
 
 
 71
 "We start with the premise that nothing in the concept of our federal system prevents state courts from enforcing rights created by federal law. Concurrent jurisdiction has been a common phenomenon in our judicial history, and exclusive federal court jurisdiction over cases arising under federal law has been the exception rather than the rule. * * * The legislative history makes clear that the basic purpose of § 301(a) was not to limit, but to expand, the availability of forums for the enforcement of contracts made by labor organizations." 368 U.S. 502, 507-509, 82 S.Ct. 519, 522-523, (emphasis supplied)
 
 
 72
 "The clear implication of the entire record of the congressional debates in both 1946 and 1947 is that the purpose of conferring jurisdiction upon the federal district courts was not to displace, but to supplement, the thoroughly considered jurisdiction of the courts of the various States over contracts made by labor organizations." Id. page 511, 82 S.Ct. page 525 (emphasis supplied)
 
 
 73
 The Congressional purpose, "not to limit" or "to displace" state court jurisdiction over labor contracts, when it enacted § 301(a), was nullified by the denial of remand since it effectively sounded the death-knell of the state court's jurisdiction over the removed action. Thus the denial made the Congressional purpose a co-victim with the plaintiff, which was deprived of its right to seek redress in a state court, and the state court, which was ousted of its concurrent jurisdiction.
 
 
 74
 In a removal proceeding under § 1441 that statute must be harnessed in a real sense to the specific federal law (here § 301(a)) relied upon as conferring original jurisdiction upon the District Court.
 
 
 75
 To hold that § 1441 may be recruited to defeat the Congressional purpose in enacting § 301(a) would be to mock reason and to deny justice, where as here, the complaint was based solely on state-created rights and did not, within its four corners, raise or present any controversy with respect to the validity, construction or effect of § 301(a) upon the determination of which the result of the action depended.
 
 
 76
 There remains for disposition the District Court's holding that it also had original jurisdiction because other than injunctive relief — money damages — could be granted to the plaintiff under Rule 54(c) of the Federal Rules of Civil Procedure, and a general prayer for "such other relief as the Court may deem appropriate", which followed the plaintiff's prayers for specific injunctive relief in its complaint at the time of the removal.
 
 
 77
 With respect to the District Court's reliance on Rule 54(c) we need only to call attention to the fact that Rule 82 of the Federal Rules specifically provides that "These rules shall not be construed to extend or limit the jurisdiction of the United States district courts or the venue of actions therein." (emphasis supplied) Rule 54(c) does not confer jurisdiction upon federal district courts and the District Court erred in holding to the contrary.[25]
 
 
 78
 It also erred in holding that the prayer for "such other relief" created original jurisdiction.
 
 
 79
 The holding could only be sustained on the theory that a complaint based on a single ground of breach of contract presents two separate and independent causes of action when it seeks two remedies — injunctive relief and money damages (assuming arguendo that this complaint can be construed as seeking money damages).
 
 On this score it was recently held that:
 
 80
 "The prayer for relief is no part of the cause of action and should not be considered in determining whether such cause of action is `separate and independent'." Puritan Fashions Corp. v. Courtaulds Limited, 221 F.Supp. 690, 695 (S.D. N.Y.1963).
 
 
 81
 While the District Court did not advert to the provisions of sub-section (c) of § 1441, it must be assumed that it had them in mind when it inferentially held that the "such other relief" prayer presented a cause of action for damages, "separate and independent", from a cause of action seeking injunctive relief.
 
 Section 1441(c) provides:
 
 82
 "Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction."
 
 
 83
 What was said in American Fire & Casualty Co. v. Finn, 341 U.S. 6, 71 S. Ct. 534, 95 L.Ed. 702 (1951) in construing § 1441(c) is dispositive here:
 
 
 84
 "One purpose of Congress in adopting the `separate and independent claim or cause of action' test for removability by § 1441(c) of the 1948 revision in lieu of the provision for removal of 28 U.S.C. (1946 ed.) § 71, was by simplification to avoid the difficulties experienced in determining the meaning of that provision. Another and important purpose was to limit removal from state courts. * * *" 341 U.S. 9, 10, 71 S.Ct. 538.
 
 
 85
 "A separable controversy is no longer an adequate ground for removal unless it also constitutes a separate and independent claim or cause of action. * * * Congress has authorized removal now under § 1441 (c) only when there is a separate and independent claim or cause of action." Id. at pages 11, 12, 71 S. Ct. at pages 538-539.
 
 
 86
 "Considering the previous history of `separable controversy,' the broad meaning of `cause of action,' and the congressional purpose in the revision resulting in 28 U.S.C. § 1441(c), 28 U.S.C.A. § 1441(c), we conclude that where there is a single wrong to plaintiff, for which relief is sought * * * there is no separate and independent claim or cause of action under § 1441(c)." Id. at pages 13, 14, 71 S.Ct. at page 540 (emphasis supplied)
 
 
 87
 On the score of the District Court's resort to the "such other relief" prayer to establish a jurisdictional base we are compelled to note that there were pending at the time of the denial of remand two separate actions for damages brought by the plaintiff against the defendants here.[26]
 
 
 88
 In summary, we are of the opinion that a suit brought in a state court, based solely on state-created rights to enjoin a union's violation, in the course of a labor dispute, of the "no-strike" provisions of its collective bargaining agreement, is not removable to a federal district court, when the complaint does not disclose within its four corners that it presents a controversy respecting the validity, construction or effect of the Constitution of the United States or § 301(a) or any other federal law upon the determination of which the result of the suit depends.
 
 
 89
 We accordingly hold that the instant case "was removed improvidently and without jurisdiction" and that the District Court erred in failing to remand it to the State Court from which it was removed in compliance with the mandatory provisions of § 1447(c) of the Removal Statute.[27]
 
 
 90
 Our brother Hastie disagrees on two grounds: — (1) that § 4 of Norris-LaGuardia extends to state courts[28] and consequently the Pennsylvania court here was "bound to * * * deny injunctive relief", so that the plaintiff did not suffer `injustice' by the denial of remand; and (2) in any event, the District Court had original jurisdiction within the Removal Statute because Norris-LaGuardia only limited its equity jurisdiction.
 
 
 91
 The sum of Judge Hastie's position on the first point is that under the doctrine of Lincoln Mills[29] and Lucas Flour[30] federal courts fashion federal labor law in suits under § 301(a), or within its purview, and state courts must apply it as fashioned; further, since Sinclair has ruled that § 4 of Norris-LaGuardia bars federal district courts from granting injunctive relief that it is now the federal law, and "any state law authorizing the enforcement of a no-strike clause by injunction is incompatible * * *."
 
 
 92
 We do not subscribe to the proposition that a federal court can extend the reach or sweep of a federal statute beyond its clearly defined provisions.
 
 
 93
 Courts have inherent power to construe legislation and to fashion remedies to effectuate the legislative design but they do not have power to legislate, directly or indirectly, nor can they amend legislation to extend its clearly defined limits under the shelter of their power to fashion remedies.
 
 
 94
 The Constitution of the United States has reserved to the Congress the power to legislate. Article I, section 1 provides that "All legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives".
 
 
 95
 Not even the Supreme Court of the United States can usurp the legislative power reserved to the Congress by the Constitution. The Supreme Court itself has time and again paid homage to the doctrine of the separation of powers decreed by the Constitution and declared that judicial legislation is abhorrent to, and in violation of, the Constitutional scheme.
 
 
 96
 In Sinclair, upon which Judge Hastie relies to sustain his view that the Norris-LaGuardia Act extends to the states, even though it only held that the Act limits the jurisdiction of courts of the United States, the Court said:
 
 
 97
 "The question of what change, if any, should be made in the existing law is one of legislative policy properly within the exclusive domain of Congress — it is a question for lawmakers, not law interpreters. Our task is the more limited one of interpreting the law as it now stands. In dealing with problems of interpretation and application of federal statutes, we have no power to change deliberate choices of legislative policy that Congress has made within its constitutional powers. Where congressional intent is discernible — and here it seems crystal clear — we must give effect to that intent." 370 U.S. 214, 215, 82 S.Ct. 1339. (Emphasis supplied).
 
 
 98
 As earlier stated in this opinion, the Norris-LaGuardia Act declared in its title that it was:
 
 
 99
 "AN ACT
 
 
 100
 "To amend the Judicial Code and to define and limit the jurisdiction of courts sitting in equity."
 
 
 101
 We further cited, in part, Section 2 of the Act — captioned "Declaration of the public policy of the United States" wherein it was stated:
 
 
 102
 "In the interpretation of this Act and in determining the jurisdiction and authority of the courts of the United States, as such jurisdiction and authority are herein defined and limited, the public policy of the United States is hereby declared as follows:
 
 
 103
 "* * * therefore, the following definitions of, and limitations upon, the jurisdiction and authority of the courts of the United States are hereby enacted." (emphasis supplied).
 
 
 104
 To the foregoing must be added that § 13(d) of the Act provides:
 
 
 105
 "The term `court of the United States' means any court of the United States whose jurisdiction has been or may be conferred or defined or limited by Act of Congress, including the courts of the District of Columbia." (emphasis supplied).
 
 
 106
 And last but not least, the very first sentence of § 4 of the Act states:
 
 
 107
 "No court of the United States shall have jurisdiction to issue any restraining order * * *." (emphasis supplied).
 
 
 108
 In construing the Norris-LaGuardia Act the Supreme Court has time and again declared that it relates to the jurisdiction of courts of the United States.
 
 
 109
 In Sinclair, the Court declared that "the Norris-LaGuardia Act deprives the courts of the United States of jurisdiction * * *." 370 U.S. 203, 82 S.Ct. 1333. (emphasis supplied)
 
 
 110
 In Order of Railroad Telegraphers v. Chicago & North Western Railway Co., 362 U.S. 330, pp. 335-336, 80 S.Ct. 761, p. 764, 4 L.Ed.2d 774 (1960), in which the provisions of § 4 of the Norris-LaGuardia Act were applied, the Court said:
 
 
 111
 "Section 2 of this Act specifies the public policy to be taken into consideration in interpreting the Act's language and in determining the jurisdiction and authority of federal courts * * *." (emphasis supplied)
 
 
 112
 Again, in Marine Cooks and Stewards, AFL v. Panama S. S. Co., 362 U.S. 365, 80 S.Ct. 779, 4 L.Ed.2d 797 (1960) where the Court was required to resolve the issue as to whether the Norris-LaGuardia Act was applicable, it cited the provision in § 1 of the Act "That no court of the United States, as herein defined, shall have jurisdiction * * *." and held that "Section 4 of that same law specifically denies jurisdiction to District Courts to issue any restraining order * * *." 362 U.S. 366, 80 S.Ct. 781. (emphasis supplied)
 
 
 113
 At page 369, 80 S.Ct. at page 783, the Court said:
 
 
 114
 "That question — of United States courts' jurisdiction to issue injunctions in cases like this — is to be controlled by the Norris-LaGuardia Act.
 
 
 115
 "That Act's language is broad. The language is broad because Congress was intent upon taking the federal courts out of the labor injunction business except in the very limited circumstances left open for federal jurisdiction under the Norris-LaGuardia Act." (emphasis supplied)
 
 
 116
 And at page 372, 80 S.Ct. at page 784 the Court said:
 
 
 117
 "All we decide is that the Norris-LaGuardia Act deprives the United States court of jurisdiction to issue the injunction it did under the circumstances shown." (emphasis supplied).
 
 
 118
 Earlier, in Brotherhood of Railroad Trainmen v. Toledo, Peoria & Western Railroad, 321 U.S. 50, at page 58, 64 S.Ct. 413, at page 418, 88 L.Ed. 534 (1944), it was said of the Norris-LaGuardia Act:
 
 
 119
 "* * * its prime purpose was to restrict the federal equity power * *". (emphasis supplied)
 
 
 120
 Congress in enacting Norris-LaGuardia, the Court said, at pages 63-64, 64 S.Ct. at page 420, was "exercising its plenary control over the jurisdiction of the federal courts * * *" (emphasis supplied).
 
 
 121
 In United States v. Hutcheson, 312 U.S. 219, 231, 61 S.Ct. 463, 466, 85 L.Ed. 788 (1941) the Court spoke of Norris-LaGuardia as "still further narrowing the circumstances under which the federal courts could grant injunctions in labor disputes." (emphasis supplied)
 
 
 122
 In Milk Wagon Drivers' Union, etc. v. Lake Valley Farm Products, Inc., 311 U.S. 91, at page 101, 61 S.Ct. 122, at page, 127, 85 L.Ed. 63 (1940), Mr. Justice Black, speaking for the Court said:
 
 
 123
 "The Norris-LaGuardia Act — considered as a whole and in its various parts — was intended drastically to curtail the equity jurisdiction of federal courts in the field of labor disputes." (emphasis supplied) It may be noted parenthetically that Mr. Justice Black spoke for the Court in Sinclair.
 
 
 124
 The simple, inescapable fact is that the Act, as it declares, was enacted as an amendment to the Judicial Code of the United States, with the declared design to "define and limit" the jurisdiction of the courts of the United States. As the cases cited recognize, the congressional intent was to take the federal courts "out of the labor injunction business except in the very limited circumstances left open". Marine Cooks and Stewards, AFL v. Panama S. S. Co., supra.
 
 
 125
 There is nothing in the language of the Act or its legislative history which can possibly, within "the range of judicial inventiveness", or the process of judicial fashioning, be construed as extending to the jurisdiction of state courts.
 
 
 126
 In 39 Opinions of Attorneys General, 242, 246 (January 26, 1939) it was said (p. 246) in speaking of the Norris-LaGuardia Act and the Social Security Act:
 
 
 127
 "the Norris-LaGuardia Act declares and protects certain rights of labor within the scope of the Federal judicial power — and the Social Security Act provides for such protection within the domain of its operation. None of these acts attempts to confer or protect such rights within a State generally and without regard to the constitutional division of powers between the Federal and State Governments." (emphasis supplied).
 
 
 128
 In Frankfurter and Greene, "The Labor Injunction" (published in 1929) it was said in discussing the then proposed Norris-LaGuardia Act (p. 220):
 
 
 129
 "[it] explicitly applies only to the authority of United States courts `to issue any restraining order or injunction'. All other remedies in federal courts and all remedies in state courts remain available." (emphasis supplied).
 
 
 130
 The jurisdictional limitations of Norris-LaGuardia were strictly construed by the Court of Appeals for the Ninth Circuit as applicable only to "courts of the United States", in International Longshoremen's and Warehousemen's Union v. Wirtz, 170 F.2d 183 (1948), cert. den. 336 U.S. 919, 69 S.Ct. 641, 93 L.Ed. 1082 (1949), rehearing den. 336 U.S. 971, 69 S.Ct. 936, 93 L.Ed. 1121 (1949). It was there held that the term "court of the United States" in the Norris-LaGuardia Act means courts created by Congress under Article III of the Constitution and that it therefore did not include the Circuit Court of the [then] Territory of Hawaii.
 
 In so doing, the Court said (p. 185):
 
 131
 "Long before 1932, when the Norris-LaGuardia Act was enacted, the phrase `court of the United States' had been given a definite and restricted meaning by the Supreme Court. The phrase, without more, means solely courts created by Congress under Article III of the Constitution and not territorial courts. American Ins. Co. v. 356 Bales of Cotton, 1 Pet. 511, 546, 7 L.Ed. 242, and many other cases summarized in McAllister v. United States, 1890, 141 U.S. 174, 183, 11 S.Ct. 949, 35 L.Ed. 693." (emphasis supplied).
 
 
 132
 The Court, in further support, quoted the following from the report offered by the late Congressman LaGuardia with reference to Section 13(d) (p. 185):
 
 
 133
 "The Constitution of the United States in Article III, section 1, provides:
 
 
 134
 "The judicial power of the United States shall be vested in one Supreme Court and in such inferior courts as the Congress may from time to time ordain and establish.
 
 
 135
 "The provisions of the bill are expressly limited (sec. 13(d)) to courts whose jurisdiction has been or may be conferred by the Congress, under the foregoing provisions of the Constitution. The Congress having the power to establish, and confer jurisdiction upon, the courts in question, it can not be questioned that it has the power to restrict or curtail the exercise of their powers, as proposed in this bill. * * *" (emphasis supplied).
 
 
 136
 Immediately following this quotation the Court said:
 
 
 137
 "This limitation to the federal courts as distinguished from other courts of the prohibition against the interdicted injunctions is clearly followed throughout the entire report of the House committee. The Congressional power invoked is described as `power over the federal judiciary generally.' This is followed by a chapter entitled `A. Congressional power over the Federal courts generally,' again referring to the courts created under the provisions of Article III, Section 2. * * *
 
 
 138
 "In the Senate report there is discussed `The limitation of the jurisdiction of Federal courts to issue injunctions in labor disputes * * *'."
 
 
 139
 There has not been cited to us a single case, before or after Sinclair, which holds that the limitations of § 4 of the Norris-LaGuardia Act extends to the states.
 
 
 140
 On the other hand, two state courts since Sinclair have held that they do not so extend, and prior to it, two other states, and a district court in this Circuit, reached the same conclusion.
 
 
 141
 The post-Sinclair cases are Curtis v. Tozer, 374 S.W.2d 557 (St. Louis Ct. of Appeals, Missouri, 1964), and C. D. Perry & Sons, Inc. v. Robilotto, 39 Misc.2d 147, 240 N.Y.S.2d 331 (Supreme Court, Rensselaer County 1963).
 
 
 142
 The pre-Sinclair state cases are: in California, McCarroll v. Los Angeles County District Council of Carpenters, 49 Cal.2d 45, 315 P.2d 322 (1957); cert. den. 355 U.S. 932, 78 S.Ct. 413, 2 L.Ed. 2d 415 (1958), and in Pennsylvania, Philadelphia Marine Trade Association v. International Longshoremen's Association, 382 Pa. 326, 115 A.2d 733 (1955), cert. den. 350 U.S. 843, 76 S.Ct. 84, 100 L.Ed. 751, and General Building Contractors' Association v. Local Union No. 542, 370 Pa. 73, 87 A.2d 250, 32 A.L.R.2d 822 (1952); the district court case is United Electrical, Radio & Machine Workers of America v. Westinghouse Electric Corporation, 65 F.Supp. 420 (E.D.Pa.1946).
 
 
 143
 Since it is Judge Hastie's view that it is Sinclair which extended the limitation of § 4 of Norris-LaGuardia to the states, the cited cases preceding it will be further referred to in the margin,[31] and discussion here limited to the post-Sinclair decisions.
 
 
 144
 In Curtis the court said (374 S.W.2d p. 591):
 
 
 145
 "* * * the prohibition against the issuance of restraining orders or injunctions in a case involving or growing out of a labor dispute applies only to a `court of the United States'; and does not limit the jurisdiction of state courts."
 
 
 146
 In so holding the court cited the three pre-Sinclair cases above referred to, and did not advert to Sinclair itself.
 
 
 147
 In Perry, the court rejected the contention that Sinclair has extended the limitations of § 4 of the Norris-LaGuardia Act to the states.
 
 
 148
 In doing so it said at page 334 of 240 N.Y.S.2d:
 
 
 149
 "The majority opinion, [in Sinclair] when carefully read, demonstrates that the author was careful to delineate that the Norris-LaGuardia Act interdiction against injunctions, was, therefore, an interdiction against federal courts.
 
 
 150
 "The opinion does not indicate in any way that such interdiction applied to state courts and the remedies there available for a breach of contract, including the right, under state law, to an injunction to restrain such breach. The majority opinion studiously avoided any expression on that subject.
 
 
 151
 "The omission is sharply pointed up in the dissenting opinion, in which, among other things, the author says, 370 U.S. at page 226, 82 S.Ct. at page 1345:
 
 
 152
 "`The question arises whether today's prohibition of injunctive relief is to be carried over to state courts as a part of the federal law governing collective agreements. If so, § 301, a provision plainly designed to enhance the responsibility of unions to their contracts, will have had the opposite effect of depriving employers of a state remedy they enjoyed prior to its enactment.'
 
 
 153
 "The Sinclair decision did not hold that the prohibition against the injunction applied to state courts." (emphasis supplied).
 
 And at page 335 it said:
 
 154
 "The Norris-La Guardia Act * * * denies to the courts of the United States, only, jurisdiction to issue injunctions in labor disputes. That is the basis for the decision in Sinclair, supra, and probably why the majority was careful to say that federal courts are barred from granting injunctions, under the 1947 Act [§ 301 (a)].
 
 
 155
 "It places no such restriction on state courts." (emphasis supplied)
 
 
 156
 In sum, we are of the view that Sinclair did no more than hold that, in an action under § 301(a) of the Labor Management Relations Act, a court of the United States, because of the strictures of § 4 of the Norris-LaGuardia Act is without jurisdiction to enjoin a union's breach of the "no-strike" provisions of its collective bargaining agreement in a case involving or growing out of a labor dispute; that the Norris-LaGuardia Act, enacted as it was under Congress' constitutionally granted power to regulate the jurisdiction of inferior federal courts, limits only the jurisdiction of such courts; that the Act did not preempt the field with respect to litigation of the type here involved; and Congress cannot constitutionally limit the remedial powers of state courts where it has not preempted the field.
 
 
 157
 On the score of the statement that Congress clearly evidenced by the terms of the Norris-LaGuardia Act its intent to limit only jurisdiction of a court of the United States, it must be pointed out that in other legislation concerning jurisdiction Congress has manifested, by appropriate terms, its intent to extend its sweep to include state as well as federal courts.
 
 
 158
 For example, in § 204(d) of the Emergency Price Control Act of 1942, 56 Stat. 32, 50 U.S.C.A.App. § 924(d) it was provided in relevant part:
 
 
 159
 "Except as provided in this section, no court, Federal, State, or Territorial, shall have jurisdiction or power to consider the validity of any such regulation * * *, or to stay, restrain, enjoin, or set aside * * any provision of this Act * * *." (emphasis supplied) Again, in § 1406 of the Narcotic Control Act of 1956, 70 Stat. 574, 18 U.S.C.A. § 1406, in which immunity was granted to witnesses, it was provided in relevant part:
 
 
 160
 "* * * nor shall testimony so compelled be used as evidence in any criminal proceeding * * * against him in any court." (emphasis supplied)
 
 
 161
 The term any court was construed in Reina v. United States, 364 U.S. 507, 81 S.Ct. 260, 5 L.Ed.2d 249 (1960) to embrace state as well as federal courts.
 
 
 162
 It is of high relevance here that in Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110 (1892) it was held that the immunity provisions of § 860 of the Revised Statutes did not extend to the states because it provided in relevant part:
 
 
 163
 "No pleading of a party, nor any discovery or evidence obtained from a party or witness by means of a judicial proceeding in this or any foreign country, shall be given in evidence, or in any manner used against him or his property or estate, in any court of the United States, in any criminal proceeding, or for the enforcement of any penalty or forfeiture:"
 
 
 164
 The Court there held that any court of of the United States means only federal courts.
 
 To the foregoing this may be added:
 
 165
 Assuming arguendo that the cause of action in the instant case asserted an action under § 301(a), it is settled that a state court enforcing a federal right is not "to be treated as a Federal court, deriving its authority not from the state creating it, but from the United States." Minneapolis & St. Louis Railroad Company v. Bombolis, 241 U.S. 211, 222, 36 S.Ct. 595, 598, 60 L.Ed. 961 (1916). It was there held that a state court enforcing rights under the Federal Employers' Liability Act of April 22, 1908 could, under a state statute, accept a less than unanimous jury verdict even though a federal court could not have done so in a Federal Employers' Liability Act suit because of the requirement of the 7th Amendment that a jury's verdict must be unanimous. In so holding the Court pointed out that the 7th Amendment by its terms related only to "any Court of the United States" and accordingly was "not concerned with state action, and deal[s] only with Federal action." (emphasis supplied)
 
 
 166
 Further, if it is now "federal law", as Judge Hastie thinks it is, that state courts cannot issue injunctions of the type here involved, this court cannot assume that the Pennsylvania court will act without regard to the applicable law.
 
 
 167
 The question of limitation of state court jurisdiction here is appropriately one for the decision of the Pennsylvania court and can be presented and determined there, subject, of course, to the ultimate reviewing power of the Supreme Court of the United States. Kohn v. Central Distributing Co., 306 U.S. 531, 534, 59 S.Ct. 689, 83 L.Ed. 965 (1939).
 
 
 168
 In H. J. Heinz Co. v. Owens, 189 F.2d 505 (9 Cir. 1951), where it was held that the district court had correctly dismissed a complaint, which sought a declaratory judgment that a patent was either invalid or not infringed and that a state court decree to the contrary, and its pending enforcement, "constituted an unlawful encroachment on federal jurisdiction under the [federal] patent laws," our brother Hastie, there speaking for the Court, said (p. 509):
 
 
 169
 "* * * the entire matter is now before the state court in the proceedings which are now pending. Decision upon that court's power will be explicit or necessarily implied in whatever it may do. We find no justification for prejudging the question or for assuming that the tribunal will not respect any controlling limitations upon its powers. * * * But if it should err and a substantial federal question should be involved, there is open a course of review even to our highest court." (emphasis supplied) Judge Hastie's second point that the District Court here had original jurisdiction within the Removal Statute because Norris-LaGuardia only limited its equity jurisdiction, has been adequately discussed at the outset of this opinion.
 
 
 170
 For the reasons stated the various Orders of the District Court will be vacated and the cause remanded with directions to the District Court to enter an Order of Remand.
 
 
 
 Notes:
 
 
 [1]
 The District Court's opinion is reported at 224 F.Supp. 985 (E.D.Pa.1963)
 
 
 [2]
 Plaintiff moved for a preliminary injunction in order to bring the issue of the District Court's earlier denial of its motion for remand within the scope of a reviewable order, since an order denying remand is not appealable
 
 
 [3]
 § 301 of the Labor Management Relations Act of 1947 provides:
 "(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 61 Stat. 156, 29 U.S. C.A. § 185(a).
 
 
 [4]
 The District Court further premised its determination that it had jurisdiction on the ground that (1) the complaint in the state action had added to its request for specified injunctive relief the clause "Grant such other relief as the Court may deem appropriate," and (2) that under Rule 54(c) F.R.Civ.P. it had "* * * residual power — to grant all appropriate relief, whether or not it is demanded * * *."
 This phase of the District Court's determination will be discussed later in this Opinion.
 
 
 [5]
 § 1441 of the Removal Act of 1948 provides:
 "(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.
 "(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which action is brought.
 "(c) Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction. June 25, 1948, c. 646, 62 Stat. 937." 28 U.S.C.A. § 1441.
 
 
 [6]
 § 4 of the Norris LaGuardia Act of 1932 provides in relevant part
 "No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute (as these terms are herein defined from doing, whether singly or in concert, any of the following acts:
 "(a) Ceasing or refusing to perform any work or to remain in any relation of employment; * * *." 47 Stat. 70, 29 U.S.C.A. § 104.
 
 
 [7]
 The Complaint alleged, and the Answer admitted, that commencing October 14, 1963 certain disputes arose between American and the union with regard to the operation of drill boats, which were "incapable of settlement", and that on October 21, 1963 further disputes developed regarding the operating of American's dredges and "the manner in which the hiring provisions of the Collective Bargaining Agreement between the parties should be effected."
 The District Court made the fact finding (Findings of Fact, Para. 9), that "On or about midnight October 31, 1963, the members of defendant Local 25 commenced a concerted work stoppage aboard plaintiff's dredges, tow boats and drill boat, and said concerted work stoppage still continues." It further found (Finding of Fact No. 12) that "The concerted mass work stoppage caused a complete cessation and suspension of plaintiff's work, and plaintiff is unable to continue its dredging and drill boat operations."
 
 
 [8]
 The District Court's view as expressed by Judge Kraft in the instant case is contra to that of three of his brother judges in the Eastern District of Pennsylvania; one other agrees with it
 In 1955, Chief Judge Clary and Judges Welsh and John W. Lord, Jr., sitting as a panel, remanded for "want of jurisdiction" a similar case: Philadelphia Marine Trade Association v. International Longshoremen's Association, Local Union No. 1291, Civil Action No. 18,747, and in 1957 Judge Lord did likewise in Pennsylvania Garment Mfg. Assn. v. Ladies Garment Workers Union, Local 351, Civil Action No. 23,164. The two cases are unreported. They were not called to Judge Kraft's attention.
 Judge Wood recently, in Food Fair Stores, Inc. v. Retail Clerks District Council No. 11, et al., Civil Action No. 35,239, reported at 229 F.Supp. 123, (E.D.Pa.1964), denied remand in subscription of Judge Kraft's view in the instant case.
 It should be added that subsequent to the remand of Philadelphia Marine Trade Association, the Supreme Court of Pennsylvania, affirmed the injunctive relief granted by the trial court, 382 Pa. 326, 115 A.2d 733 (1955), cert. den. 350 U.S. 843, 76 S.Ct. 84, 100 L.Ed. 751.
 It would serve no useful purpose to discuss cases which dealt with remand problems under § 301(a) prior to Sinclair. It need only be said that the great weight of pre-Sinclair decisions throughout the country was on the side of remand.
 Our research has disclosed four reported cases since Sinclair.
 In Merchants Refrigerating Co. of California v. Warehouse Union, Local No. 6, 213 F.Supp. 177 (N.D.Calif.1963) the Court held that it was without "jurisdiction" to take the case, citing Sinclair and Norris-LaGuardia, and remanded the action to state court. Jurisdiction was there construed as power to entertain the action.
 A contrary decision was rendered in Tri-Boro Bagel Co., Inc. v. Bakery Drivers Union Local 802, 228 F.Supp. 720 (E.D.N.Y.1963). There the District Court's denial of remand of a removed state action, seeking an injunction to compel a union's compliance with the no-strike provision of its labor contract, was "grounded * * * on the broader principle * * * that what is justice under law federally determined [in Sinclair] may not be varied by state courts of concurrent jurisdiction." 228 F.Supp. 722, note 3. (emphasis supplied)
 Crestwood Dairy, Inc. v. Kelley, 222 F. Supp. 614 (E.D.N.Y.1963) similarly premised its denial of remand on its holding that (p. 617):
 "The `jurisdictional' form of the prohibitions of that Act [Norris-LaGuardia] upon granting injunctions are not to be interpreted as tolerating remand to the state court for the purpose of enabling it to grant the injunctions that the Norris-LaGuardia Act would preclude a federal court from granting; it is as little likely that the Congress meant to sanction such a sleight as to suppose that it meant to repeal the Norris-LaGuardia Act by implication". It may be noted parenthetically that the state action in this case sought both an injunction and damages so that it is not apposite on its facts to the instant case.
 Similarly inapposite is H.A. Lott, Inc. v. Hoisting & Portable Engineers Local No. 450, 222 F.Supp. 993) (S.D.Tex.1963) where both an injunction and damages were sought in the complaint.
 
 
 [9]
 In Sinclair there were work stoppages in the course oflabor disputes, during the term of the collective bargaining agreement, over matters subject to its grievance procedure and provisions for arbitration; the employer, Sinclair Refining Co., brought an action under § 301, in a federal court for alleged violation of the collective bargaining agreement's no-strike provision, and in Count 3 of the Complaint asked for specific enforcement via injunction of the no-strike agreement.
 The 7th Circuit Court of Appeals, in 290 F.2d 312, 319 (1961) affirmed the District Court's dismissal of Count 3, holding, as the District Court had, in 187 F.Supp. 225, 228 (N.D.Ind.1960), that the Norris-LaGuardia Act "withdraws jurisdiction from federal courts to issue an injunction in a case involving or growing out of a labor dispute."
 
 
 *
 It has long been settled that an Act's title may be considered in ascertaining Congressional intent
 In Rector, etc., of Holy Trinity Church v. United States, 143 U.S. 457, at page 462, 12 S.Ct. 511, at page 513, 36 L.Ed. 226 (1892) it was said:
 "Among other things which may be considered in determining the intent of the legislature is the title of the act. We do not mean that it may be used to add to or take from the body of the statute, (Hadden v. Collector [72 U.S.], 5 Wall. 107 [72 U.S. 107, 18 L.Ed. 518],) but it may help to interpret its meaning."
 
 
 [10]
 In Reynolds v. Stockton, 140 U.S. 254, at page 268, 11 S.Ct. 773, at page 777, 35 L.Ed. 464 (1891) it was said:
 "`Jurisdiction' may be defined to be the right to adjudicate concerning the subject-matter in the given case. To constitute this there are three essentials: First, the court must have cognizance of the class of cases to which the one to be adjudged belongs; second, the proper parties must be present; and, third, the point decided must be, in substance and effect, within the issue." (emphasis supplied)
 
 
 [11]
 Mr. Justice Frankfurter's concurring opinion in United States ex rel. Touhy v. Ragen, 340 U.S. 462, 473, 71 S.Ct. 416, 95 L.Ed. 417 (1951)
 
 
 [12]
 Bouvier's Law Dictionary, Rawle's Third Revision, at page 1760 defines jurisdiction as follows:
 "The authority by which judicial officers take cognizance of and decide causes * * * the power to hear and determine a cause. * * *"
 
 
 [13]
 In illustration, it was said in Kirby at page 487:
 "The common sense of man approves the judgment mentioned by Puffendorf, that the Bolognian Law which enacted, `That whoever drew blood in the streets should be punished with the utmost severity,' did not extend to the surgeon who opened the vein of a person that fell down in the street in a fit. The same common sense accepts the ruling cited by Plowden, that the Statute of 1 Edward II., which enacts that a prisoner who breaks prison shall be guilty of a felony, does not extend to a prisoner who breaks out when the prison is on fire — `for he is not to be hanged because he would not stay to be burnt.' And we think that a like common sense will sanction the ruling we make, that the Act of Congress which punishes the obstruction or retarding of the passage of the mail, or its carrier, does not apply to a case of temporary detention of the mail caused by the arrest of the carrier upon an indictment for murder."
 
 
 [14]
 Sec. 2, Act of March 3, 1875, 18 Stat. at L. 470
 
 
 [15]
 In Shelby County, Tennessee v. Fairway Homes, Inc., 285 F.2d 617, 619, (6th Cir. 1961) it was held there was no original jurisdiction because "The complaint in the present case seeks to enforce a right which takes its origin in the laws of the United States,but there is nothing in the complaint alleging a dispute or controversy respecting the validity or construction of said law, upon the determination of which the result depends." (emphasis supplied)
 
 
 [16]
 It must be assumed that Congress, when it revised the Removal Statute in 1948, was aware of the Supreme Court's construction in Gully and Starin and preceding cases, of the phrase, "arising under the Constitution or laws of the United States." On that score it was stated in American Fire & Casualty Co. v. Finn, 341 U.S. 6, 10, 71 S.Ct. 534, 95 L.Ed. 702 (1951), that one of the main purposes of the 1948 revision of the Removal Statute was to further limit removal of cases from the state courts
 Prior to 1948, Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108, 61 S. Ct. 868, 872, 85 L.Ed. 1214 (1941), in holding that removal statutes must be strictly construed by the courts, noted: "* * * the Congressional purpose to restrict the jurisdiction of the federal courts on removal."
 
 
 [17]
 In Monmouth Canning Co. v. Local Union, 340, 140 F.Supp. 304, p. 305 (D. Me.1956), Chief Judge Woodbury of the Court of Appeals for the First Circuit, sitting in District Court by special designation, in ordering remand of a removed case, said:
 "The original federal jurisdiction necessary for removal under Title 28 U.S.C. § 1441 exists in the absence of diversity of citizenship of the parties only if federal law is an essential element of the plaintiff's case for: `Not every question of federal law emerging in a suit is proof that a federal law is the basis of the suit' (citing Gully). And, to determine the fundamental basis of the suit reference must be had to the complaint and to it alone unaided by the answer, if any, or the petition for removal." (emphasis supplied)
 
 
 [18]
 In so holding the Court said, 368 U.S. 502, at page 506, 82 S.Ct. 519, 522, 7 L.Ed.2d 483:
 "It has not been argued, nor could it be, that § 301(a) speaks in terms of exclusivity of federal court jurisdiction over controversies within the statute's purview. On its face § 301(a) simply gives the federal district courts jurisdiction over suits for violation of certain specified types of contracts. The statute does not state nor even suggest that such jurisdiction shall be exclusive. It provides that suits of the kind described `may' be brought in the federal district courts, not that they must be." (emphasis supplied)
 
 
 [19]
 Id. at page 507, 82 S.Ct. at page 522
 
 
 [20]
 The comity doctrine was stated as follows in Covell v. Heyman, 111 U.S. 176, 182, 4 S.Ct. 355, 358, 28 L.Ed. 390 (1884):
 "The forbearance which courts of coordinate jurisdiction, administered under a single system, exercise towards each other, whereby conflicts are avoided, by avoiding interference with the process of each other, is a principal of comity with perhaps no higher sanction than the utility which comes from concord; but between state courts and those of the United States, it is something more. It is a principle of right and of law, and, therefore of necessity. It leaves nothing to discretion or mere convenience." (emphasis supplied)
 Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, pp. 108-109, 61 S.Ct. 868, p. 872, 85 L.Ed. 1214 (1941) further emphasized the interdiction of the comity doctrine upon the exercise of federal jurisdiction as follows:
 "The power reserved to the states under the Constitution to provide for the determination of controversies in their courts, may be restricted only by the action of Congress in conformity to the Judiciary Articles of the Constitution. `Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined.' Healy v. Ratta, 292 U.S. 263, 270, 54 S.Ct. 700, 703, 78 L.Ed. 1248 * * *."
 
 
 [21]
 The quoted statement appears in the following sentence at 368 U.S. page 508, 82 S.Ct. at page 523:
 "To hold that § 301(a) operates to deprive the state courts of a substantial segment of their established jurisdiction over contract actions would thus be to disregard this consistent history of hospitable acceptance of concurrent jurisdiction."
 
 
 [22]
 Id. at page 509, 82 S.Ct. at page 523
 
 
 [23]
 368 U.S. 502, at page 503, 82 S.Ct. 819, at page 520. It merits observation that in Note 8, page 514, 82 S.Ct. page 526, the Court said, in part:
 "In the course of argument at the Bar two questions were discussed which are not involved in this case, and upon which we expressly refrain from intimating any view — whether the Norris-LaGuardia Act might be applicable to a suit brought in a state court for violation of a contract made by a labor organization, and whether there might be impediments to the free removal to a federal court of such a suit. The relation of the Norris-LaGuardia Act to state courts applying federal labor law has never been decided by this Court. See McCarroll v. Los Angeles County Dist. Council of Carpenters, 49 Cal.2d 45, 315 P.2d 322 [cert. den. 355 U.S. 932, 78 S.Ct. 413, 2 L.Ed.2d 415 (1958)]. * * * And quite obviously we have not yet considered the various problems concerning removal under 28 U.S.C. § 1441 * * *." (emphasis supplied)
 
 
 [24]
 341 Mass. 337, 338-339, 169 N.E.2d 885, 887
 
 
 [25]
 3A Barron & Holtzoff, Federal Practice and Procedure, § 1701, pp. 172-177. (Wright Ed. 1958) and the numerous cases therein cited
 
 
 [26]
 Civil Action No. 34454 and Civil Action No. 34455. They were filed November 4, 1963. The Order of the District Court denying plaintiff's motion for remand was dated November 6, 1963 and filed the next day
 
 
 [27]
 Section 1447(c) provides in relevant part: "If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district courtshall remand the case, and may order the payment of just costs." (emphasis supplied).
 
 
 [28]
 The first point was not relied on by the District Court nor even remotely suggested in its disposition
 
 
 [29]
 Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 457, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957)
 
 
 [30]
 Local 174, Teamsters, etc. v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962)
 
 
 [31]
 McCarroll, in holding that the provisions of the Norris-LaGuardia Act, which deprive acourt of the United States of jurisdiction to issue an injunction to restrain a breach of a collective bargaining agreement, in a case arising out of a labor dispute, are not applicable to state courts, said (315 P.2d p. 332):
 "The Norris-LaGuardia Act is in terms drawn as a limitation on the courts of the United States. `No court of the United States,' declares section 1, `shall have jurisdiction to issue any * * * injunction in a case involving or growing out of a labor dispute * * *,' and a court of the United States is defined in section 13(d) as `any court of the United States whose jurisdiction has been or may be conferred or defined or limited by Act of Congress, including the courts of the District of Columbia.' 29 U.S.C.A. §§ 101, 113(d). The statute aimed to restrict the federal equity power, and was justified constitutionally on the basis of Congress' power to regulate the jurisdiction of the federal courts. * * * It did not limit the remedial power of the state courts * * * and could not constitutionally have done so since its prohibition was not restricted to injunctions in labor disputes affecting interstate commerce or any other subject over which Congress has paramount power.
 "Section 301 of the Labor Management Relations Act does not embody any policy that requires a state court enforcing rights created by that section to withhold injunctive relief. The principal purpose of section 301 was to facilitate the enforcement of collective bargaining agreements by making unions suable as entities in the federal courts, and thereby to remedy the one-sided character of existing labor legislation. * * * We would give altogether too ironic a twist to this purpose if we held that the actual effect of the legislation was to abolish in state courts equitable remedies that had been available, and leave an employer in a worse position in respect to the effective enforcement of his contract than he was before the enactment of section 301.
 "Nothing in the nature of the rights created by section 301 requires that injunctive relief be denied in their enforcement. Such relief would of course not impair any federal contract right, nor would it expand it in conflict with any policy that we have been able to discern in the statute. To the contrary, the principal purpose of the statute is to encourage the formation and effective enforcement of collective bargaining agreements. See Textile Workers v. Lincoln Mills of Alabama, 77 S.Ct. 912. The restriction on the remedies available in the federal courts arises not from any policy in the Labor Management Relations Act itself but from the Norris-LaGuardia Act, and the policy of that statute as we have seen is confined to the federal courts."
 In Philadelphia Marine Trade Association the court held that neither the Labor Management Relations Act nor the Norris-LaGuardia Act deprives state courts of equity of their traditional power to require performance of contractual obligations by the process of injunctive relief.
 In General Building Contractors' Association it was earlier held that neither § 301 of the Labor Management Relations Act nor the Norris-LaGuardia Act deprived the state courts of jurisdiction to issue an injunction.
 In so doing the court said with respect to the Norris-LaGuardia Act at page 80 of 370 Pa., at page 254 of 87 A.2d:
 "Nor is the Norris-LaGuardia Act, 29 U.S.C.A. § 101, of any benefit to appellants. That statute uses the words `court of the United States'. By its very terms the Act only applies to suits for injunctions in the United States courts and is not intended to limit the jurisdiction of the state courts: United Electrical, Radio & Machine Workers of America (CIO) [et al.] v. Westinghouse Electric Corporation, D.C., 65 F. Supp. 420, at page 422; see Milk Wagon Drivers' Union, Local No. 753 [et al.], v. Lake Valley Farm Products, Inc. [et al.], 311 U.S. 91 at page 101, 61 S.Ct. 122. * * *"
 And at page 82, 87 A.2d at page 255:
 "Prevention of violation of obligations contained in a contract by injunctive relief is a power traditionally exercised by courts of this Commonwealth. Congress has not acted upon the specific subject matter at issue. Enforcement of contracts may be required according to the usual processes of the law."
 In United Electrical, Radio & Machine Workers of America it was said (65 F. Supp. p. 422):
 "The Norris-LaGuardia Act merely restricts the jurisdiction of federal courts to issue restraining orders in a case `involving or growing out of a labor dispute', except in strict accordance with certain sections thereof. The statute uses the term `court of the United States', and Section 113(d), 29 U.S.C.A., of the Act defines that term to mean `any court of the United States whose jurisdiction has been or may be conferred or defined or limited by Act of Congress.' The Act, therefore, does not limit the jurisdiction of state courts. It was exclusively intended to curtail the equity jurisdiction of federal courts in the field of labor disputes."
 
 
 
 171
 HASTIE, Circuit Judge (dissenting).
 
 
 172
 A mistaken assumption underlies this court's reasoning in support of its conclusion that the present suit was not removable from the state court. That assumption is stated in the first sentence of the majority opinion and repeated thereafter. In my view, it has led the court into error.
 
 
 173
 The majority opinion begins by characterizing this action as "a suit based solely on a state-created right, to enjoin the defendant union's violation, in the course of a labor dispute, of the `no-strike' provision of its collective bargaining agreement * * *." My fundamental disagreement is with the characterization of this as "a suit, based solely on a state-created right". I think that Local 174, Teamsters, etc. v. Lucas Flour Co., 1962, 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593, makes federal labor law which, by force of section 301(a) of the Labor Management Relations Act, has superseded local law, the sole basis and exclusive determinant of rights such as are asserted here between labor and management under a collective bargaining contract in an industry affecting commerce. While Charles Dowd Box Co., Inc. v. Courtney, 1962, 368 U.S. 502, 82 S.Ct. 819, 7 L.Ed.2d 483, held that a state court may entertain such a suit as this, that case implied and Local 174, Teamsters, etc. v. Lucas Flour Co., supra, thereafter squarely held that the action in whatever forum contested, arises out of and is controlled by federal labor law. The majority opinion here misconstrues the Dowd case as sanctioning an application of state law. But Dowd does no more than approve litigation in a state forum where federal law must be applied.
 
 
 174
 The federal labor law which governs such cases as this is emerging and achieving fromulation from case to case. In Sinclair Refining Co. v. Atkinson, 1962, 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed. 2d 440, the Supreme Court considered whether federal labor law permits the enjoining of a strike called in violation of a collective bargaining agreement containing a no-strike clause. The Court decided that section 301 of the Labor Management Relations Act and section 4 of the Norris-La Guardia Act, considered together, require the conclusion that federal labor law does not permit such an injunction.
 
 
 175
 The present case is indistinguishable from the Sinclair Refining case, except for the fact that one was filed in a federal district court and the other in a state court. But Local 174, Teamsters, etc. v. Lucas Flour Co., supra, teaches that in this area federal labor law is controlling in either forum. And in the Dowd opinion, 368 U.S. at 506, 82 S.Ct. at 522, the Court quoted with approval the language of Textile Workers Union of America v. Lincoln Mills, 1957, 353 U.S. 448, 457, 77 S.Ct. 912, 1 L.Ed.2d 972, that "state law, if compatible with the purpose of § 301, may be resorted to in order to find the rule that will best effectuate the federal policy", but "[a]ny state law applied * * * will be absorbed as federal law * * *." When this conception is applied to the present problem, we find that any state law authorizing the enforcement of a no-strike clause by injunction is incompatible with and, therefore, cannot be absorbed in federal labor law. For the Sinclair Refining case has decided that the Norris-La Guardia Act restriction upon the enjoining of peaceful strikes is a definitive part of the federal labor policy which section 301 requires courts to apply.
 
 
 176
 The foregoing analysis can be avoided only by arguing that a state "remedy" by way of injunction is sufficiently distinct from and consistent with the federal contract "right" which it would redress so that controlling federal policy would not be offended by state injunctive relief. But the argument that federal labor policy under section 301 would be well served by and, therefore, should sanction the enjoining of violations of no-strike clauses, was fully and clearly stated in the dissenting opinion in Sinclair Refining Co. v. Atkinson, 370 U.S. at 215, 82 S.Ct. 1328. This argument did not persuade the majority of the Court. I do not see how controlling federal labor policy could have been less offended if the Sinclair Refining injunction had been sought in a state court rather than a federal court. I conclude, therefore, that neither a state court nor a federal court may grant injunctive relief in such a case as this. See Aaron, Strikes in Breach of Collective Agreements, Some Unanswered Questions, 1963, 63 Colum.L. Rev. 1027.
 
 
 177
 The foregoing conclusion is relevant to the principal issue presented by this appeal, whether this suit was removable from the state court to the federal district court. As a practical matter, if my analysis is correct, removability does not deprive the plaintiff of injunctive relief to which it would otherwise have been entitled, for federal labor law precludes such relief in any forum. Yet, it is this supposed deprivation which the majority characterize as an "injustice" and seek to avoid.
 
 
 178
 More technically, the right to remove, or the necessity for remand, depends upon whether this case is founded on a federal "claim or right" and whether the action is one "of which the district courts have original jurisdiction". 28 U.S.C. § 1441(b). This is a federal claim and cannot be anything else because Congress, by enacting section 301, caused federal labor law to supersede state law as the exclusive legal basis for the enforcement of collective bargaining agreements in industries affecting commerce. Local 174, Teamsters, etc. v. Lucas Flour Co., supra; Textile Workers Union of America v. Lincoln Mills, supra. Whether a district court would have had "original jurisdiction" of this action depends upon the sense in which the elusive concept of "jurisdiction" applies to the interdiction of injunctive relief which results from the mandate of the Norris-La Guardia Act. On this question, the authorities are sharply divided and the Supreme Court has not yet spoken. I am persuaded that the preclusion of injunctive relief or "equity jurisdiction", by force of the Norris-La Guardia Act, is not an ouster of such "original jurisdiction" of the district court over the parties and the subject matter as the removal statute contemplates and, in this kind of case, section 301 creates. The classic exposition of this position by Professor Chafee is so familiar, clear and fully reasoned that anything more than a citation of his analysis would be supererogation. Chafee, Some Problems of Equity, 1950, ch. 8 and 9. Accord, S. E. Overton Co. v. International Brotherhood, W.D.Mich. 1953, 115 F.Supp. 764; Pocahontas Term. Corp. v. Portland Bldg. & Construction Trade Council, D.Me.1950, 93 F.Supp. 217. The authorities which express a contrary view, and some which, properly understood, do not, are cited and discussed by the majority, but to me they are not persuasive.
 
 
 179
 Summarizing, I think the question of removability affects no substantive issue here because a state trial court, no less than a federal district court, would be bound to apply federal labor law and deny injunctive relief as was done in the Sinclair Refining case. However, the technical question of removability is in issue and must be decided. In my view, this action asserts a federal claim originally cognizable in a federal district court and, therefore, was removable and properly removed under section 1441(b) of Title 29.
 
 
 180
 For these reasons, I would affirm the judgment of the district court.